UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NRO BOSTON, NRO EDGARTOWN, JASON INDELICATO, and ALICE INDELICATO,<br><br>     Plaintiffs,<br><br>v.<br><br>ARCH CAPITAL FUNDING LLC, CAPCALL, LLC, TVT CAPITAL LLC, YELLOWSTONE CAPITAL LLC, YES FUNDING SERVICES LLC, MCA RECOVERY LLC, RTR RECOVERY LLC, EVAN MARMOTT, FRANK BOURRICAUDY, YITZHAK STERN, TSVI DAVIS, THE JOHN AND JANE DOE ARCH INVESTORS, THE JOHN AND JANE DOE TVT INVESTORS, THE JOHN AND JANE DOE YELLOWSTONE INVESTORS, and THE JOHN AND JANE DOE YES INVESTORS,<br><br>     Defendants. | Civil Action No. 18:10060 |

**YELLOWSTONE CAPITAL, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT OR TRANSFER VENUE TO THE UNITED STATE DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

# TABLE OF AUTHORITIES

Cases

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
176 F.3d 315 (6th Cir. 1999) ................................................................. 18

*Alvarado-Morales v. Digital Equipment Corp.*,
843 F.2d 613 (1st Cir. 1988) .................................................................. 25

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .............................................................................. 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 15

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
134 S. Ct. 568 (2013) .............................................................................. 7

*Atuahene v. City of Hartford*,
10 Fed. Appx. 33 (2d Cir. 2001) ..................................................... 13, 22

*Bagheri v. Galligan*,
160 Fed. Appx. 4 (1st Cir.2005) ...................................................... 13, 22

*Baker v. GMC*,
522 U.S. 222 (1998) .............................................................................. 12

*Baker v. Sturdy Built Mfg., Inc.*,
No. 3:07CV212-HEH, 2007 WL 3124881 (E.D. Va. Oct. 23, 2007) ............ 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................... 12, 13, 15, 22

*Bessette v. Avco Fin. Servs.*,
230 F.3d 439 (1st Cir. 2000) .................................................................. 18

*Brady v. Basic Research, L.L.C.*,
101 F. Supp. 3d 217 (E.D.N.Y. 2015) .................................................... 24

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
116 F.3d 1364 (11th Cir. 1997) ............................................................. 19

*Cabble v. Rollieson*,
2006 U.S. Dist. LEXIS 7385, 2006 WL 464078 (S.D.N.Y. 2006) ............... 24

*Canfield v. Elmer E. Harris & Co.*,
252 N.Y. 502 (1930) .............................................................................. 10

*Carter's of New Bedford, Inc. v. Nike, Inc.*,
790 F.3d 289 (1st Cir. 2015) ................................................................... 8

*Chartock v National Bank of California*,
2017 NY Slip Op 30357(U) (N.Y. Sup. Ct. 2017) ................................... 25

*Chestnut Hill Real Estate v Contrs. Cas. & Sur. Co.*,
280 A.D.2d 446 (2d Dept. 2001) ........................................................... 11

*Colonial Funding Network, Inc. v. Epazz, Inc.*,
252 F. Supp. 3d 274 (S.D.N.Y. 2017) .............................................. 16, 26

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
765 F. Supp. 1467 (C.D. Cal. 1991) ...................................................... 19

*Durante Bros. & Sons, Inc. v Flushing Nat'l Bank*,
755 F.2d 239 (2d Cir. 1985) .................................................................. 20

i

*Ellen v. Town of Sandwich School Committee,*
   2011 WL 2909591 (Mass. Sup. Ct. March 9, 2011) ............................................... 13
*Field v Mayor, etc., of New-York,*
   6 N.Y. 179 (N.Y. 1852) ...................................................................................... 26
*First Capital Asset Mgmt. v Satinwood, Inc.,*
   385 F.3d 159 (2d Cir. 2004) ............................................................................... 17
*Garrity v. Garrity,*
   399 Mass. 367 (1987) ................................................................................... 6, 14
*Gkanios v Gkanios,*
   233 A.D.2d 367 (2d Dept. 1996) ........................................................................ 11
*IBIS Capital Group, LLC v Four Paws Orlando LLC,*
   2017 NY Slip Op 30477(U) (N.Y. Sup. Ct. 2017) ............................................... 25
*In re Higgins,*
   270 B.R. 147 (Bankr. S.D.N.Y. 2001) ................................................................ 10
*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.,*
   731 F.3d 556 (6th Cir. 2013) .............................................................................. 16
*Jacobs v. Soars,*
   No. CIV.A. 14-12536-LTS, 2014 WL 7330762 (D. Mass. Dec. 19, 2014) ...................... 13, 22
*Jones v H. Ronald Buttarazzi & Assocs.,* P. C.,
   204 A.D.2d 1018 (4th Dept. 1994) ..................................................................... 11
*K9 Bytes, Inc. v Arch Capital Funding, LLC,*
   56 Misc. 3d 807 (N.Y. Sup. Ct. 2017) ................................................................ 25
*LG Funding, LLC v Snowstar, Inc.,*
   2017 NY Slip Op 32741(U) (N.Y. Sup. Ct. 2017) ............................................... 25
*Lokai Holdings, LLC v. Twin Tiger USA, LLC,*
   2018 U.S. Dist. LEXIS 19518, 2018 WL 739435 (S.D.N.Y. 2018) ......................... 24
*McFarland v. Memorex Corp.,*
   493 F. Supp. 631 (N.D. Cal. 1980) .................................................................... 19
*Merch. Cash & Capital, LLC v. Ethnicity Inc.,*
   2016 NY Slip Op 32593[U] (N.Y. Sup. Ct. 2016) ............................................... 26
*Merchant Cash & Capital, LLC v. S. Jersey Speed LLC,*
   2016 NY Slip Op 32591[U] (N.Y. Sup. Ct. 2016) ............................................... 26
*Merchant Cash & Capital, LLC v. Transfer Intl. Inc,*
   2016 NY Slip Op 32395[U] (N.Y. Sup. Ct. 2016) ............................................... 25
*Merchant Cash & Capital, LLC v Frederick & Cole, LLC,*
   2016 NY Slip Op 32730(U) (N.Y. Sup. Ct. 2016) ............................................... 25
*Merchant Cash & Capital, LLC v G&E Asian Am. Enter., Inc.,*
   2016 NY Slip Op 31592(U) (N.Y. Sup. Ct. 2016) ............................................... 25
*Merchant Cash & Capital, LLC v Liberation Land Co., LLC,*
   2016 NY Slip Op 32589(U) (N.Y. Sup. Ct. 2016) ............................................... 25
*Merchant Cash & Capital, LLC v Sogomonyan,*
   2017 NY Slip Op 31111(U) (N.Y. Sup. Ct. 2017) ............................................... 25
*Merchant Cash & Capital, LLC v Yehowa Med. Servs., Inc.,*
   2016 NY Slip Op 31590(U) (N.Y. Sup. Ct. 2016) ............................................... 25
*Ouaknine v MacFarlane,*
   897 F.2d 75 (2d Cir. 1990) ................................................................................. 21

*Overview Books, LLC v. United States*,
438 F. App'x 31 (2d Cir. 2011) ............................................................... 10
*Partners, LLC v. Novabella, Inc.*, 2018 Ind. App. LEXIS 71, 16,
2018 WL 1075779 (Ind. Ct. App. February 28, 2018) ........................... 12
*Phillips Exeter Academy v. Howard Phillips Fund, Inc.*,
196 F.3d 284 (1st Cir. 1999) ................................................................... 9
*Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC*,
2012 NY Slip Op 33785[U] (Sup. Ct. Suffolk Cty. 2012) ..................... 26
*Remexcel Managerial Consultants, Inc. v. Arlequin*,
583 F.3d 45 (1st Cir. 2009) .............................................................. 13, 22
*Retail Capital, LLC v. Spice Intentions Inc.*,
2016 NY Slip Op 32614[U] (N.Y. Sup. Ct. 2016) ................................. 25
*Riverwoods Chappaqua Corp. v Mar. Midland Bank, N.A.*,
30 F.3d 339 (2d Cir. 1994) ..................................................................... 17
*Salahuddin v. Cuomo*,
861 F.2d 40 (2d Cir. 1988) ..................................................................... 24
*Schaaf v. Borsher*,
82 A.D.2d 880 (N.Y. App. Div. 1981) ................................................... 26
*Sistema Universitario Ana G. Mé,
ndez*, 775 F.3d 41 (1st Cir. 2014) ........................................................... 8
*Speelman v Pascal*,
10 N.Y.2d 313 (N.Y. 1961) .................................................................... 26
*Sun Microsytems, Inc. v. Versata Enterprises, Inc.*,
630 F. Supp. 2d 395 (D. Del. 2009) ....................................................... 24
*Tate v. Natl. Bank of California*,
2016 NY Slip Op 32396[U] (N.Y. Sup. Ct. 2016) ................................. 26
*Tripoint Glob. Equities, L.L.C. v. Fasolino*, 13 Civ. 1030(DLC),
2013 WL 5677126 (S.D.N.Y. Oct. 18, 2013) ................................... 10, 11
*U.S. Airline Pilots Ass'n v. Awappa, LLC*,
615 F.3d 312 (4th Cir. 2010) ................................................................. 16
*U1IT4Less, Inc. v. FedEx Corp.*,
871 F.3d 199 (2d Cir. 2017) ................................................................... 17
*UFCW Local 1776 v Eli Lilly & Co.*,
620 F.3d 121 (2d Cir. 2010) ................................................................... 21

Statutes

18 U.S.C. § 1962 ................................................................. 1, 15, 16, 20
28 U.S.C. §1404(A) ..................................................................................... 7
M.G.L. c. 93A §§2 and 11 .............................................................. 1, 22, 23
Section 1962(c) ........................................................................................ 17

Rules

Fed. R. Civ. P. 8 ........................................................................................ 24
FED. R. CIV. P. 8(a) ........................................................................... passim
Fed. R. Civ. P. 12(f) ..................................................................... 24, 25, 27

Fed. R. Civ. P. 12(f)(2) ................................................................................. 23, 24
Fed. R. Civ. P. Rule 12(b)(6) ........................................................................ 15, 23
N.Y. CPLR 3218(b) ............................................................................................ 10
Rule 9(b) and 8(a) ............................................................................................... 17

Other Authorities

*Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*,
    2017 N.Y. Misc. LEXIS 5355 (N.Y. Sup. Ct. June 15, 2017) ................................................ 25
*Colonial Funding Network, Inc. v. McNider Marine, LLC*,
    2017 U.S. Dist. LEXIS 192991, (S.D.N.Y. 2017) ................................................................. 18
*Contract Transp. Servs. v. New Era Lending LLC*,
    2017 U.S. Dist. LEXIS 217433 (N.D. Ohio October 2, 2017) ................................................. 9
*Merchant Cash & Capital, LLC v. Cramer E. Constr.*,
    2016 N.Y. Misc. LEXIS 4647 (N.Y. Sup. Ct. 2016) .............................................................. 25
Moreover, in *Colonial Funding Network, Inc. v. McNider Marine, LLC*,
    2017 U.S. Dist. LEXIS 192991, 11-17 ................................................................................. 23
*Wild Edibles, Inc. v Indus. Workers of the World Local 460/640*,
    2008 US Dist. LEXIS 79619, *3 (S.D.N.Y 2008) ................................................................. 17

## INTRODUCTION

The Court should dismiss NRO BOSTON's, NRO EDGARTOWN's, JASON INDELICATO's, and ALICE INDELICATO'S (collectively the "Plaintiffs") Amended Complaint against Defendant YELLOWSTONE CAPITAL, LLC ("Yellowstone") because the claims are barred the doctrine of res judicata, the Plaintiffs have failed to plead a claim, failed to plead with the requisite factual particulars, dismiss this action due to the forum selection clauses in the parties' agreements or, alternatively, transfer this action to the United States District Court for the Southern District of New York. Further, the Court should strike the more than one hundred immaterial, impertinent, redundant, and scandalous allegations gratuitously inserted into the Amended Complaint by the Plaintiffs.

The Amended Complaint purports to allege claims against Yellowstone for RICO (18 U.S.C. § 1962), violation of a Massachusetts consumer protection statute (M.G.L. c. 93A §§2 and 11), and usury. Instead of pleading facts amounting to a claim, close to a quarter of the allegations in the Amended Complaint are irrelevant opinion quotes to news articles, blog posts, and advertisements that have nothing to do with the facts of this case, or the parties herein. Far from attempting to assert claims, the Plaintiffs are transparently attempting to extort Yellowstone for money by portraying Yellowstone in a negative light in a public docket unless Yellowstone capitulates and pays the Plaintiffs to stop filing meritless actions and defective pleadings.

This case appears to arise from a series of purchase and sale of future receivables transactions entered into by NRO Boston, NRO Edgartown and Yellowstone between February 2016 and July 2016. Each agreement was entered into in New York, contemplated Yellowstone making payment in New York, collecting its share of sale proceeds in New York, and each

1

Agreement contained a mandatory New York jurisdiction, venue, forum selection and choice of law clause.

It is undisputed that Yellowstone performed under each agreement, but that NRO Boston and NRO Edgartown each breached their final agreements with Yellowstone, thereby damaging Yellowstone in New York. Judgments were entered against the Plaintiffs herein by the Supreme Court of the State of New York, County of Rockland on September 23, 2016. The Plaintiffs herein have never asked the Supreme Court of the State of New York to vacate the judgment against them, have never challenged the jurisdiction of the Supreme Court of the State of New York and have, for all intents and purposes, conceded that judgment was validly entered against them in New York.

Tellingly, less than a year ago in April 2017, Plaintiffs filed a substantially similar pleading in Massachusetts state court against Yellowstone and approximately 20 other merchant cash advance companies, that was based on the exact same transactions at issue in the Amended Complaint here. Plaintiffs attempted to join Yellowstone as a non-party counterclaim defendant in an action between the Plaintiffs and a company called Saturn Funding. Plaintiffs named Yellowstone and several other entities in a prolix, confused, rambling and improper counterclaim (the "Dismissed NRO Pleading"). Yellowstone moved to dismiss for lack of jurisdiction, failure to state a claim, and for failure to serve a plain and concise pleading. The Superior Court of Massachusetts, County of Suffolk, issued a decision dismissing the counterclaim against Yellowstone because the allegations were prolix, rambling, redundant, immaterial, and failed to amount to any claims being asserted against Yellowstone. Due to the conclusory and defective nature of Plaintiffs' allegations, the Court declined to rule on the issue of jurisdiction.

Only Months later, Plaintiffs filed the instant action against Yellowstone based on the very same transactions as the Dismissed NRO Pleading, with a substantially similar pleading that includes the same rambling, redundant, and immaterial allegations. Unfortunately, Plaintiffs have disregarded the state court's dismissal order and have amplified their behavior by including Yellowstone's CEO, Yitzhak Stern[1], and an underwriter, Tsvi Davis[2], for the sole purpose of further vexing and harassing Yellowstone. The Amended Complaint plainly fails to cure the glaring deficiencies articulated by the state court in dismissing the Dismissed NRO Pleading. On that basis, and for several other equally dispositive reasons detailed herein, the Amended Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

It is undisputed that Yellowstone is a New York limited liability company with offices in New York and New Jersey. NRO Boston and NRO Edgartown are limited liability companies that are part of a chain of businesses that derive substantial revenue from the online retailing of clothing and accessories to customers around the country, including New York and New Jersey.

It is undisputed that the Plaintiff businesses entered into agreements to sell future receivables to Yellowstone in 2016. In each instance, the Plaintiffs electronically reached out to Yellowstone at Yellowstone's offices in New York and New Jersey with offers to sell future receivables to Yellowstone. **Exhibit 2.** In each instance, Yellowstone received all documents at

---

[1]     Messr. Stern has not visited Massachusetts for at least a decade and has never done any business in Massachusetts. Messr. Stern has no knowledge, connections or involvement in any way with the Plaintiffs or any transaction with the Plaintiffs and was apparently named solely because he is presently the CEO of Yellowstone. Despite the unseemly attacks in the Amended Complaint for allegedly circulating news articles on his private social media account, he is not alleged to have done anything in this case beyond being the CEO of Yellowstone. **Exhibit 1**.

[2]     Messr. Davis believes he may have once in the last decade briefly visited Massachusetts during a personal trip. He has never done any business in Massachusetts and was apparently named because he was an underwriter for Yellowstone on the contracts in which the Plaintiffs breached, and judgment was entered. He is not alleged to have actually done anything except speak to the Plaintiffs in a text message. **Exhibit 2**.

its offices in New York and New Jersey, and all communications took place electronically in New York and New Jersey. In each instance, Yellowstone performed by depositing the purchase price into an account at Santander bank in New York. In each instance, Yellowstone received its share of sales proceeds from Santander Bank in New York at its bank in New York. **Exhibit 2**.

Every agreement specifically identifies Yellowstone as being located in New York and New Jersey. None of the agreements contemplated Yellowstone taking any action in Massachusetts or subjecting itself to Massachusetts law or jurisdiction. At no point did Yellowstone conduct business in the State of Massachusetts. **Exhibit 2**.

In recognition of the fact that Yellowstone is a New York company, each agreement contained a mandatory New York choice of law provision that provides that "[t]his Agreement shall be governed by and construed exclusively in accordance with the laws of the state of New York, without regards to any applicable principles of conflicts of law." **Exhibit 2**, p.6, Section 4.6. Moreover, each agreement contained a mandatory New York jurisdiction and venue clause that provides that "[i]f there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, then such litigation shall only be instituted in any court sitting in New York State (the "Acceptable Forums"). **Exhibit 2**, p.6, Section 4.6. Both Yellowstone and the Plaintiffs went on to explicitly agree that "the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction and or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or applicable made by either party to transfer such proceeding to an Acceptable Forum." **Exhibit 2**, p.6, Section 4.6.

## PROCEDURAL HISTORY

The Supreme Court of the State of New York, County of Rockland entered judgment in favor of Yellowstone and against the Plaintiffs herein on September 22, 2016 in *Yellowstone Capital, LLC v. NRO Boston, LLC d/b/a NRO Boston, Jason Indelicato, and Alice Indelicato* Index Number 034002/2016, and in *Yellowstone Capital, LLC, v. NRO Edgartown, LLC d/b/a NRO Edgartown d/b/a Captain Kids, Jason Indelicato, and Alice Indelicato*, Index Number 034003/2016. Yellowstone served the Plaintiffs herein with copies of the Judgments with Notice of Entry on September 30, 2016, in each case. **Exhibit 3**.

The Plaintiffs did not dispute that judgment was lawfully entered or that the Supreme Court of the State of New York had jurisdiction. Indeed, they simply acknowledged they were in breach and declined to take any action. Yellowstone took no action to domesticate its judgment and Yellowstone and the Plaintiffs reached a stalemate on judgment enforcement.

Several months later in April 2017, the Plaintiffs attempted to improperly join Yellowstone and several of other entities to a wholly unrelated matter in Massachusetts as non-party counterclaim defendants in *Saturn Funding, LLC. v. NRO Boston, LLC, et al*, Civil Action No. 16-cv-2522-D. Based upon the pleading upon and Plaintiffs' counsel's conduct, it appeared that their filing was an effort to drive up the legal fees of several entities and threaten them with costly litigation in a state where they do not conduct business unless the various entities voluntarily capitulate to a host of demands. In other words, Plaintiffs sought to use blatantly improper joinder of non-parties to an action in an improper venue before a court that lacked personal jurisdiction solely to shake down close to twenty businesses. **Exhibit 4**.

Yellowstone, and at least seven other entities, moved to dismiss the Dismissed NRO Pleading in that case, which is substantially similar to the Amended Complaint in this case, for

lack of jurisdiction, failure to state a claim, failure to satisfy the basic pleading requirements of

Rule 8, various statutes of limitations, and an array of other issues. The state court conducted a

thorough analysis on the Dismissed NRO Pleading and held:

> [T]he difficulty of linking the plaintiffs-in-counterclaim myriad factual allegations to each of these named parties is significant, and that difficulty is exacerbated by the fact that many of the allegations appear to be irrelevant and/or repetitive. Further, it is unclear what the claims are based on and what claims are specifically asserted against each of the twenty-one additional parties. *Garrity v. Garrity,* 399 Mass. 367, 369 (1987) (holding that a "rambling" complaint should be dismissed because it failed to "separate the various allegations into a short and plain statement of claims"). It is quite difficult to discern from the Amended Counterclaim NRO's claims against each of the counterclaim-defendants. The pleading fails to make a short and plain statement and it serves to deprive the counterclaim-defendants of fair notice regarding claims asserted against them.…Finding that the plaintiffs-in-counterclaim Amended Complaint unnecessarily "verbose and confusing," the court will exercise its discretion and dismiss the pleading without prejudice.

**Exhibit 5**, p. 4.

The state court dismissed the counterclaims on October 10, 2017 without reaching any

decision on the other grounds for dismissal. **Exhibit 5**, p. 5.

Plaintiffs waited until December 12, 2017, after the time to challenge Yellowstone's

judgments had expired, to file the instant action using a substantially similar complaint to their

countercomplaint that was dismissed in the earlier matter. **Exhibit 6**. This action was removed to

Federal Court, whereupon the Plaintiffs served an Amended Complaint that failed to cure the

defects in their pleading and added yet another party. **Exhibit 7**.

The Plaintiffs do not challenge the jurisdiction of the Supreme Court of the State of New

York. They do not contend that the Supreme Court of the State of New York lacked subject matter

jurisdiction over the dispute with Yellowstone. They do not contend that the Supreme Court of

the State of New York lacked personal jurisdiction over them. This is not a collateral attack for

lack of jurisdiction from the New York court, and the Plaintiffs have not requested a declaration

holding that the Supreme Court of the State of New York did not have jurisdiction over them. Instead, Plaintiffs bring this action ignoring the settled law requiring the Court to grant full faith and credit to the New York judgments and asking this Court to disregard the doctrine of res judicata. **Exhibit 7**.

This is just the latest attempt by the Plaintiffs to shake down several companies doing business in New York by initiating frivolous actions in Massachusetts state and federal court for an improper purpose. In this action, the Plaintiffs name MCA Recovery, a part of the Yellowstone corporate structure, Yellowstone's CEO, and an underwriter for Yellowstone so as to drive up Yellowstone's legal costs until Yellowstone is economically forced to capitulate to Plaintiffs' demands. For the reasons set forth herein, the Court should dismiss this action in its entirety.

## ARGUMENT

I.  **THE COURT SHOULD DISMISS THIS ACTION OR TRANSFER IT TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK PURSUANT TO 28 U.S.C. §1404(A).**

The Court should dismiss this action pursuant to 12(b)(6) or, alternatively, transfer venue to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

"When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). In such a case, "the plaintiff's choice of forum merits no weight" and the parties "waive the right to challenge the preselected forum as inconvenient." Id. at 581-82. In short, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." Id. (emphasis added).

In the First Circuit, motions alleging the existence of a forum selection clause are treated as a motion to dismiss pursuant to 12(b)(6). *Claudio-de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014). When Plaintiffs' allegations are linked to and dependent upon a document, the authenticity of which is not challenged, the document effectively merges into the pleadings and the District Court can review it in deciding the motion to dismiss under Rule 12(b)(6). *Id.*

In a motion to dismiss on a forum selection clause, "[t]he burden of proof is on the party opposing the enforcement of the forum selection clause." *Carter's of New Bedford, Inc. v. Nike, Inc.*, 790 F.3d 289, 292 (1st Cir. 2015). The burden to oppose a forum selection clause is a heavy one and requires a strong showing that the forum selection clause should be set aside because: 1) the forum selection clause was procured by fraud or overreaching; 2) enforcement is unreasonable and unjust; 3) enforcement would render proceedings so gravely difficult and inconvenient to the point of practical impossibility; or 4) enforcement of the forum selection clause would contravene the strong public policy of the forum. *Id.*

In this case the Plaintiffs does not allege that it would effectively be impossible to litigate any dispute in New York. Plaintiffs' inclusion of Massachusetts 93A claims that are clearly connected with an agreement are insufficient to defeat a forum selection clause on public policy grounds. *Id.* Plaintiffs make no argument that enforcing the forum selection clause would be unreasonable and unjust.

The mandatory jurisdiction, choice of law, venue, and forum selection clauses states:

This Agreement shall be governed by and construed exclusively in accordance with the laws of the state of New York, without regards to any applicable principles of conflicts of law. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, then such litigation shall only be instituted in any court sitting in New York State (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the

jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction and or venue.  Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or applicable made by either party to transfer such proceeding to an Acceptable Forum.

**Exhibit 2**, p. 6, Section 4.6.

The subject forum selection clause language, in a case dealing with nearly identical RICO allegations to those herein, was held to be enforceable in *Contract Transp. Servs. v. New Era Lending LLC*, 2017 U.S. Dist. LEXIS 217433 (N.D. Ohio October 2, 2017).

The strict application of the forum selection clause in this case is especially necessary where, as here, the Court lacks personal jurisdiction over multiple defendants including, Yellowstone.  Yellowstone is located in New York and New Jersey, negotiated and agreed to the agreements in New York and New Jersey, was solicited by the Plaintiffs electronically in New York and New Jersey, performed by making payment from New York and New Jersey to a bank located in New York, and received its share of sale proceeds from a bank located in New York.

Contrary to Plaintiffs' conclusory allegations, "the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in plaintiff's home state." *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 290 (1st Cir. 1999).  What few factual allegations have been included in the Amended Complaint fail to demonstrate that Yellowstone satisfies the minimum contacts requirements for personal jurisdiction and fall woefully short of demonstrating a purposeful availment of Massachusetts jurisdiction or law. *See id.*

For the foregoing reasons, the Court should dismiss this action or, in the alternative, transfer it to the Southern District of New York.

## II.   THE COURT SHOULD DISMISS THIS ACTION BECAUSE IT IS BARRED BY THE DOCTRINE OF RES JUDICATA.

Plaintiffs' claims against Yellowstone are barred by the doctrine of *res judicata* because the Supreme Court of New York, County of Rockland has already entered final judgments in Yellowstone's favor against Plaintiffs based upon Plaintiffs' breaches of the agreements.  As noted above, Plaintiffs' Amended Complaint does little more than ask this Court to issue a decision that would directly contradict the judgments obtained by Yellowstone in New York state court concerning the exact same agreements.

"Under the doctrine of *res judicata,* or claim preclusion, [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Overview Books, LLC v. United States*, 438 F. App'x 31, 33 (2d Cir. 2011).  A confession of judgment is a judicial lien that is "docketed and enforced in the same manner and with the same effect as a judgment in an action in the supreme court."  N.Y. CPLR 3218(b).  Under New York law, a confession of judgment is treated "the same as a final judgment after trial," and is treated as a conclusive adjudication of all of the matters embraced in the confession of judgment.  *See Tripoint Glob. Equities, L.L.C. v. Fasolino*, 13 Civ. 1030(DLC), 2013 WL 5677126, at *9 (S.D.N.Y. Oct. 18, 2013) (explaining that confession of judgment was subject to *res judicata* principles, and that plaintiff's collateral attack of underlying transaction as usurious was improperly brought as a collateral, rather than a direct attack on the judgment).

Because a confession of judgment is to be treated as any other judgment rendered by a state court, the Full Faith and Credit Clause requires federal courts to give state court judgments the same "preclusive effect it would be according by the rendering state."  S*ee In re Higgins*, 270 B.R. 147, 156 (Bankr. S.D.N.Y. 2001); *see also Canfield v. Elmer E. Harris & Co.*, 252 N.Y. 502, 505 (1930) (explaining that a confession of judgment "[s]tands in much the same position as one by

stipulation or consent and is a conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim.")

Here, Plaintiffs confessed judgment as to their liability under the agreements in the event that they breached the agreements.  Plaintiffs breached the agreements when they refused to remit Yellowstone's share of receivables in accordance with the agreements. Subsequently, judgment was entered against the Plaintiffs. At that point, the affidavit of confession of judgment was transformed into a fully enforceable judgment entitled to the same preclusive effect as a final judgment following a trial.  *See Tripoint Glob.*, 2013 WL 5677126, at *9.

It is undisputed that Plaintiffs have failed to mount a direct attack on the Judgment before the Supreme Court of the State of New York, Rockland County.  Moreover, Plaintiffs have given this Court no basis to even consider that the New York Courts lacked jurisdiction over the dispute. Indeed, the judgments were brought to Plaintiffs' attention immediately, and Plaintiffs took no action in New York court to dispute the validity of the Judgment.[3]  As such, this Court must view the Judgment as a conclusive adjudication, on the merits, regarding the propriety of the agreement and the Judgment.

Plaintiffs argue throughout the Amended Complaint that the Court should hold that the Plaintiffs' confession of judgment violates Massachusetts public policy as the basis for all of their

---

[3]       Only the Supreme Court of the State of New York, County of Rockland would have had subject matter jurisdiction over an action to reopen the judgments entered against the Plaintiffs herein.  New York law provides that that a judgment by confession can be reopened only in the court that entered the judgment because only the court that entered the judgment has subject matter jurisdiction. *Chestnut Hill Real Estate v Contrs. Cas. & Sur. Co.*, 280 A.D.2d 446 (2d Dept. 2001); *Gkanios v Gkanios*, 233 A.D.2d 367 (2d Dept. 1996); *Jones v H. Ronald Buttarazzi & Assocs.*, P. C., 204 A.D.2d 1018 (4th Dept. 1994).
        Where an action to vacate a judgment was brought in the incorrect court, the proper response is to dismiss the action without prejudice to refile in the proper Court because the vacatur of a judgment is not a mere matter of venue. *Jones*, 204 A.D.2d at 1019 (a confessed judgment entered in the Rochester City Court cannot properly be vacated by the Supreme Court of the State of New York, County of Monroe); *Gkanios*, 233 A.D.2d at 367 (a confessed judgment entered by the Supreme Court of the State of New York, County of Westchester cannot be vacated by the Supreme Court of the State of New York, County of Putnam); *Chestnut Hill Real Estate*, 280 A.D.2d 446 (2d Dept. 2001) (a judgment entered by the Supreme Court of the State of New York, County of Nassau cannot be modified by the Supreme Court of the State of New York, County of Suffolk).

claims. However, the Supreme Court of the United States has conclusively rejected Plaintiffs' public policy argument holding that there is no "roving 'public policy exception' to the full faith and credit due judgments." *Baker v. GMC*, 522 U.S. 222, 233 (1998). Indeed, the "Full Faith and Credit Clause 'ordered submission . . . even to hostile policies reflected in the judgment of another State, because the practical operation of the federal system, which the Constitution designed, demanded it.'" *Id.*

In applying the Supreme Court's holding in the face of an identical public policy objection to the one herein, the Indiana Court of Appeals held that "[b]ecause the New York confessed judgment appears on its face to be rendered by a court of competent jurisdiction and [the judgment debtor] did not challenge the jurisdiction of the New York court to enter the confessed judgment, the trial court was required to afford full faith and credit to the New York confessed judgment. Accordingly, the trial court erred by refusing to grant the judgment full faith and credit…" *EBF Partners, LLC v. Novabella, Inc.*, 2018 Ind. App. LEXIS 71, 16, 2018 WL 1075779 (Ind. Ct. App. February 28, 2018) (internal citations omitted).

For the foregoing reasons, pursuant to the doctrine of *res judicata*, the claims asserted against Yellowstone in the Amended Complaint should be dismissed.

### III.  THE COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 8(a).

Fed. R. Civ. P. 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

To withstand a motion to dismiss, a plaintiff has an "obligation to provide the grounds of [the plaintiff's] entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requirement "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" and factual allegations must plausibly suggest (not merely be consistent with)

entitlement to relief.  *Id.*; *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 54 (1st Cir. 2009).

Where a plaintiff has named multiple defendants to an action, this obligation requires that a plaintiff provide particularized allegations against each defendant.  *See, e.g.*, *Bagheri v. Galligan*, 160 Fed. Appx. 4, 5 (1st Cir.2005) (upholding district court's dismissal of action where the original complaint did not "state clearly which defendant or defendants committed each of the alleged wrongful acts" and the plaintiff had failed to cure the pleading deficiencies); *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff]'s complaint failed to satisfy [the] minimum standard" of pleading under Fed. R. Civ. P. 8(a).); *Jacobs v. Soars*, No. CIV.A. 14-12536-LTS, 2014 WL 7330762, at *7 (D. Mass. Dec. 19, 2014) (referring to all of the defendants collectively, when it cannot be reasonably inferred that all of the defendants were involved, does not meet the requirements of Rule 8(a)).

Specifically, where plaintiffs have "lump[ed] all of the defendants together" and "refer[red] to] all of the defendants collectively, when it cannot be reasonably inferred that all of the defendants were involved," courts have held that plaintiff failed to meet the pleading requirements. *See Atuahene*, 10 Fed. Appx. at 34; *Jacobs*, 2014 WL 7330762, *7.  Indeed, "[g]one are the days that plaintiffs can survive a motion to dismiss with mere labels and conclusions, generically lumping defendants together, and formulaically reciting the elements of a cause of action."  *Ellen v. Town of Sandwich School Committee*, 2011 WL 2909591 (Mass. Sup. Ct. March 9, 2011), *rev'd on other grounds by Johnson v. Sch. Comm. of Sandwich*, 81 Mass. App. Ct. 812, 815, (Mass. 2012).

There are over 96 of the 308 paragraphs where Plaintiffs have just lumped all or most of the defendants together and, in conclusory fashion, formulaically recited elements of a cause of action. Indeed, dozens more paragraphs just formulaically recite elements of a cause of action and do not even bother to identify any defendants at all. The Plaintiffs occasionally plead one-off examples in contrast to the more than one hundred collective allegations. **Exhibit 7**, ¶61, 64, 90, 105, 109, 135, 140, 143.

Almost every allegation specific to Yellowstone is contained in paragraphs 146 – 191 and relates to alleged hearsay in the form of social media posts that are not alleged to discuss any fact in this case, the transaction in this case, the time frame relevant to this case, or ever allegedly relied upon by anyone in this case. Fifty paragraphs of immaterial and impertinent references to hearsay do not somehow cure Plaintiffs' failure to plead in accordance with Rule 8(a). Plaintiffs' use of collectivized terms and generic allegations is a deliberate attempt to mask the fact that the parties herein engaged in a wide array of separate transactions and that those transactions had different agreements, different terms, and different facts. Plaintiffs have failed to clearly state which defendant or defendants committed each of the alleged wrongful acts.

Indeed, it must be noted that Plaintiffs' substantially similar "countercomplaint" from the state court action was dismissed for this very reason by the Massachusetts state court on October 10, 2017. The state court conducted a thorough analysis on Plaintiffs' rambling allegations and held:

> [T]he difficulty of linking the plaintiffs-in-counterclaim myriad factual allegations to each of these named parties is significant, and that difficulty is exacerbated by the fact that many of the allegations appear to be irrelevant and/or repetitive. Further, it is unclear what the claims are based on and what claims are specifically asserted against each of the twenty-one additional parties. *Garrity v. Garrity,* 399 Mass. 367, 369 (1987) (holding that a "rambling" complaint should be dismissed because it failed to "separate the various allegations into a short and plain statement of claims"). It is quite difficult to discern from the Amended Counterclaim NRO's

14

> claims against each of the counterclaim-defendants. The pleading fails to make a
> short and plain statement and it serves to deprive the counterclaim-defendants of fair
> notice regarding claims asserted against them….Finding that the plaintiffs-in-
> counterclaim Amended Complaint unnecessarily "verbose and confusing," the court
> will exercise its discretion and dismiss the pleading without prejudice.

**Exhibit 5**, p. 4. The Amended Complaint in this case suffers from the exact same deficiency that

resulted in dismissal of its prior pleading. For the reasons set forth herein, the Court should

dismiss the Amended Complaint in its entirety.

## IV.   THE AMENDED COMPLAINT FAILS TO ALLEGE FACTS SUFFICIENT TO STATE A COGNIZABLE CAUSE OF ACTION.

In determining whether to dismiss a claim pursuant to Fed. R. Civ. P. Rule 12(b)(6), the

question is whether the claimant has alleged facts sufficient to state a claim to relief. *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The proponent of a claim must allege facts that are

plausible, rather than just conceivable. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). Although

the claimant's factual allegations are accepted as true for the purposes of deciding a motion to

dismiss, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements do not suffice." *Id.* at 678.

### A.  Plaintiffs' RICO Claim (1st Claim) Fails To State A Cause Of Action.

The Court should dismiss Plaintiffs' Civil RICO claim for failure to allege facts sufficient

to state a cause of action. To state a civil RICO violation, the claimant must allege facts showing

1) a substantive violation of 18 U.S.C. § 1962, 2) injury to the claimant, and 3) that the injury to

claimant was caused by the defendant's violation of 18 U.S.C. § 1962.

Plaintiffs' Amended Complaint falls short of the basic pleading requirements for a RICO

claim. Indeed, the Amended Complaint does not contain any new facts Plaintiffs could not have

asserted in their prior dismissed pleading which could possibly give rise to a RICO cause of

action. Rather, like the prior pleading, the Amended Complaint is replete with heavy-handed

rhetoric, conclusory assertions, and immaterial content, but lacking in the factual content necessary to allege each element of a RICO claim. A RICO claim is "a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity." *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010). Federal courts emphasize that because RICO penalties are "drastic" in order "to provide society with a powerful response to the dangers of organized crime," courts must "exercise caution 'to ensure that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions.'" *Id.* (internal citation omitted).

RICO is not a cause of action to be pled lightly, and this dispute offers a model example of the tendency of litigants to improperly elevate ordinary commercial disputes into racketeering claims. This is particularly so in a case like this one, in which Plaintiffs seek, in essence, to "federalize" a dispute primarily centering on issues of state law. *Cf. Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 568 (6th Cir. 2013) ("The plaintiffs' reading of RICO would dramatically alter the proper distribution between state and national governments of police authority…").

Indeed, in warning attorneys against injecting RICO claims into this exact type of action, the Southern District of New York noted that "[t]he 'loan' or 'purchase' distinction has already produced a small body of litigation whose results in particular cases are not known until the court has ruled. **That process is not helped by extravagant invocation of laws prohibiting racketeering by organized crime**, and the counterclaims asserted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, are dismissed." *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274, 287 (S.D.N.Y. 2017) (emphasis added).

Plaintiffs' RICO claim must be dismissed because they fail to allege a pattern of racketeering activity, fail to identify an enterprise distinct from the Defendants themselves, and make vague "group allegations" that violate Rule 9(b) and 8(a), and fail to allege RICO damages.

### 1. Plaintiffs have not Alleged a RICO Enterprise.

In order to allege a substantive RICO violation, a party must state the existence of a RICO enterprise that is separate and distinct from the RICO person. "To establish liability under Section 1962(c) requires "the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name. The RICO "'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Wild Edibles, Inc. v Indus. Workers of the World Local 460/640*, 2008 US Dist. LEXIS 79619, *3 (S.D.N.Y 2008)(internal citations omitted). "[F]or an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *First Capital Asset Mgmt. v Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004).

A corporate entity may not be both the RICO person and the RICO enterprise. *Riverwoods Chappaqua Corp. v Mar. Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994). "A corporation can act only through its employees, subsidiaries, or agents. So 'if a corporate defendant can be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated legal entities—then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless.'" *U1IT4Less, Inc. v. FedEx Corp.*, 871 F.3d 199, 206 (2d Cir. 2017). Consequently, a plaintiff may not circumvent the distinctness requirement by alleging a RICO enterprise that consists of a corporate defendant associated with its employees, agents, subsidiaries and affiliates. *Id.*

Moreover, the Plaintiffs cannot simply allege an enterprise from a group of defendants acting in their self-interests; rather, Plaintiffs must allege "how the Defendants acquired or maintained an interest in or control of the enterprise...through the alleged racketeering activity." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 329 (6th Cir. 1999). In the instant case, Plaintiffs just contend that Messr. Stern bought and became the sole owner of Yellowstone, something which Plaintiffs' counsel knows the be false due to the fact that Plaintiffs' counsel routinely brings meritless actions against Yellowstone and has had occasion to review Yellowstone's Rule 7.1 statements in cases such as this and *Colonial Funding Network, Inc. v. McNider Marine, LLC*, 2017 U.S. Dist. LEXIS 192991, (S.D.N.Y. 2017). There is no allegation that any enterprise was acquired or control has been maintained through alleged racketeering activity.

The Plaintiffs just lump together two different groups of defendants and make conclusory assertions that Yellowstone's CEO is friends with an owner of CapCall (though Plaintiffs do not allege whom that is). **Exhibit 7**, ¶¶104 and 105. The problem with this formulation is that employees, affiliates, and subsidiaries carrying on the regular affairs of a corporate structures (corporate structures are comprised of corporations, and their subsidiaries, affiliates, and employees) – even if the various components are allegedly committing a pattern of predicate acts in the course of the corporate structure's business and on behalf of the corporate structure – is that the employees and affiliates do not create an enterprise distinct from the corporate structure. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 449-450 (1st Cir. 2000).

Allegations of lawful conduct taken by Messr. Stern as Yellowstone's CEO, Messr. Davis as an underwriter for Yellowstone, and MCA Recovery as an affiliate of Yellowstone performing its collections work on breached contracts are not allegation of a RICO enterprise. It is merely

an allegation of a single unified corporate structure operating properly. Separately alleging that Yellowstone and Arch are the same company is not only incorrect, it does not have any legal significance.

Plaintiffs' allegation that CapCall, through its employees, may once have brokered a transaction between Plaintiffs and Yellowstone or Arch (Plaintiffs do not actually allege what, if any, transactions ever were brokered) are not allegations of a RICO enterprise. **Exhibit 7**, ¶¶99, 101, and 102.

Plaintiffs' attempt to mask their pleading deficiency by naming parties together in the conclusory sentences and then placing paragraphs in a disjointed and confusing order to give the impression of a connection that is ultimately comes together by saying two CEOs might allegedly know each other. Such attempts to conjure a RICO enterprise by lumping together defendants haphazardly runs afoul of the heightened specific requirements of Rule 9(b). *See Baker v. Sturdy Built Mfg., Inc.*, No. 3:07CV212-HEH, 2007 WL 3124881, at *3 (E.D. Va. Oct. 23, 2007); *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1471 (C.D. Cal. 1991); *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).

The Plaintiffs have failed to allege a RICO enterprise. They have alleged two arbitrary groups of defendants and imply that one might have brokered a deal with the other in one instance or that one CEO might be friends with another CEO.

For the foregoing reasons, the Court should dismiss Plaintiffs' RICO claim for failure to state a claim.

**2. Plaintiff has not alleged a pattern of racketeering activity or collection of unlawful debt.**

18 U.S.C. § 1962 proscribes collection of unlawful debt and a pattern of racketeering activity. Plaintiffs' Amended Complaint falls completely apart when it comes to alleging a pattern of racketeering activity or collection of unlawful debt. The Plaintiffs do not allege a pattern of racketeering activity or pattern of collecting unlawful debt.

To allege a pattern of racketeering activity, a plaintiff must provide proof of two or more RICO predicates that occurred within ten years of each other there must be a relationship between the predicates demonstrating a relationship and threat of continuing criminal activity. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 479 (2006). Plaintiffs do not allege a pattern of racketeering activity or any predicate racketeering acts.

Instead, Plaintiff hand their entire case on the conclusory assertion that the plaintiffs have collected on unlawful debt in this specific case. The Plaintiffs have not pled facts of a past pattern of ongoing collection of unlawful debt. The Plaintiffs have not pled facts that a conspiracy existed that committed predicate acts. The Plaintiffs have not pled continuity in any relationship and have not pled the threat of continuing activity. The Plaintiffs have not alleged an open-ended or closed-ended pattern. The Plaintiffs have not pled specific instances of Yellowstone collecting on unlawful debts.

Additionally, even if the agreements herein could be argued to be usurious loans, isolated incidents are not sufficient to constitute the "business of making usurious loans." *Durante Bros. & Sons, Inc. v Flushing Nat'l Bank*, 755 F.2d 239 (2d Cir. 1985). Sporadic, occasional, or inadvertent violations of usury laws are excluded from the scope of a RICO claim. *Id.* at 250. Plaintiffs have failed to allege facts sufficient to show a business of making usurious loans.

Finally, the unlawful debts that Plaintiffs contend were being collected in this case, were lawfully entered New York judgments that are entitled to full faith and credit by this Court.[4] Plaintiffs' claim asks this Court to vacate and reverse a lawful New York state judgment as an element of RICO. As a matter of law, a lawfully judgment of a sister state is entitled to full faith and credit from this Court and, as such, cannot be held unlawful.

For the foregoing reasons, the Court should dismiss Plaintiffs' RICO claim in its entirety.

### 3. There is no injury or causation.

In order to assert a RICO claim, a party must allege a specific injury, and a direct relationship between the alleged RICO violation and Defendant's injury. Moreover, a plaintiff must demonstrate that the violation caused his injury in two respects:

> First, he must show that the RICO violation was the proximate cause of his injury, meaning "there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." Second, he must show that the RICO violation was the but-for (or transactional) cause of his injury, meaning that but for the RICO violation, he would not have been injured.

*UFCW Local 1776 v Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010).

Additionally, the alleged injury to the claimant must have arisen from the investment of racketeering income in a RICO enterprise rather than just from the alleged predicate racketeering activities. *Ouaknine v MacFarlane*, 897 F.2d 75, 83 (2d Cir. 1990). Here, the Plaintiffs suggest their unspecified and conclusory injuries were caused by the alleged judgment, usury, deceptive trade practices, rather than an alleged investment of racketeering income in a RICO enterprise. Indeed, the lawfully entered New York judgments specifically hold that Yellowstone was the damaged party and the Plaintiffs herein was the beneficiary of the agreements.

---

[4] This was addressed in substantial detail in Yellowstone's papers. Stern and Davis explicitly adopt the entire full faith and credit argument.

Plaintiffs' RICO allegations must fail because they have not claimed an injury from allegedly invested illicit income.

### B. Plaintiffs' M.G.L. c. 93A §§2 and 11 And Usury Claims Must Be Dismissed (2nd and 3rd Claims) For Failure To State A Claim.

Plaintiffs' M.G.L. c. 93A §§2 and 11 (2nd claim), and usury (3rd claim) claims fails to satisfy Fed. R. Civ. P. 8(a) and, as such, must be dismissed pursuant to 12(b)(6).

To withstand a motion to dismiss under 12(b)(6), a plaintiff has an "obligation to provide the grounds of [the plaintiff's] entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requirement "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" and factual allegations must plausibly suggest (not merely be consistent with) entitlement to relief. *Id.*; *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 54 (1st Cir. 2009).

Where a plaintiff has named multiple defendants to an action, this obligation requires that a plaintiff provide particularized allegations against each defendant. *See, e.g.*, *Bagheri v. Galligan*, 160 Fed. Appx. 4, 5 (1st Cir. 2005). Lumping multiple defendants into each allegation and providing no factual basis to distinguish their conduct is facially insufficient. *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001); *Jacobs v. Soars*, No. CIV.A. 14-12536-LTS, 2014 WL 7330762, at *7 (D. Mass. Dec. 19, 2014) (referring to all of the defendants collectively, when it cannot be reasonably inferred that all of the defendants were involved, does not meet the requirements of Rule 8(a)).

Plaintiffs' allegations extend to about a dozen parties, possibly more than two dozen contracts, and contend that each or some or all or one of those separate agreements was actually a loan with usurious rates and which wrongfully required Plaintiffs to waive certain rights. However, each of the transactions was governed by separate agreements with different terms.

Rather than alleging facts relating to each transaction, Plaintiffs just make omnibus allegations about all the defendants and a vague reference to the agreements without no reference to which agreements. Moreover, Plaintiffs allege no specific misrepresentations, no dates or times of misrepresentations, or anything specific to any party. The only allegation specifically complained of in either section is that a lawful judgment by confession was entered in the Supreme Court of the State of New York, County of Rockland, which the Plaintiffs have never deigned to challenge.

The complete failure to satisfy Rule 8(a) and 9(b) was precisely why the state court dismissed the original action. Moreover, in *Colonial Funding Network, Inc. v. McNider Marine, LLC*, 2017 U.S. Dist. LEXIS 192991, 11-17, where Plaintiffs' counsel put forth an almost identical pleading to the one herein, the Court dismissed the case and provided a lengthy analysis of Plaintiffs' counsel's failure to plead in a manner sufficient to satisfy Rule 8(a) or 9(b) for the purposes of nearly identical claims.

For the foregoing reasons, the Court should dismiss the Plaintiffs' second claim for M.G.L. c. 93A §§2 and 11 and third claim for usury pursuant to Fed. R. Civ. P. 12(b)(6).

## V. THE COURT SHOULD STRIKE REDUNDANT, IMMATERIAL, IMPERTINENT, OR SCANDALOUS ALLEGATIONS FROM THE AMENDED COMPLAINT.

The Amended Complaint is laden with redundant, impertinent, immaterial, and scandalous matter that should be stricken pursuant to Fed. R. Civ. P. 12(f)(2). Alternatively, the Court should strike entire Amended Complaint and dismiss this action because it is confused, ambiguous, prolix, and unintelligible. The Amended Complaint drags on for over 53 pages with more than 308 paragraphs. More than a third of the Amended Complaint is immaterial, impertinent, and redundant material that has no place in a pleading. Moreover, there are five paragraphs that contain

scandalous attacks on Yellowstone by trying to impute the infamy associated with consumer pay day loan transactions onto Yellowstone.

Fed. R. Civ. P. 12(f) provides that the Court may strike from a pleading any redundant, immaterial, impertinent, or scandalous motion. Alternatively, if a pleading so completely deviates from the pleading requirements and becomes so confused, ambiguous, vague, or unintelligible that its true substance becomes disguised, the Court may choose to dismiss the pleading altogether. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). A motion to strike portions of a pleading pursuant to Fed. R. Civ. P. 12(f)(2) may be asserted where the complaint deviates from the requirement that a pleading be short and plain and includes allegations that are redundant or immaterial, or fail to comply with Fed. R. Civ. P. 8. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

While Motions to strike pursuant Fed. R. Civ. P. 12(f)(2) are disfavored when they seek to dismiss affirmative defenses, they serve a valuable purpose to "clean up pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters" when used to remove allegations that are unnecessary to the pleading. *Lokai Holdings, LLC v. Twin Tiger USA, LLC*, 2018 U.S. Dist. LEXIS 19518, 2018 WL 739435 (S.D.N.Y. 2018) *quoting Sun Microsytems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 225 (E.D.N.Y. 2015). "A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court." *Cabble v. Rollieson*, 2006 U.S. Dist. LEXIS 7385, 2006 WL 464078, 30 (S.D.N.Y. 2006). Superfluous descriptions, repugnant words, and other

allegations that are not substantive elements of a cause of action have no place in pleadings before the Court may be stricken pursuant to Fed. R. Civ. P. 12(f). *Alvarado-Morales v. Digital Equipment Corp.*, 843 F.2d 613, 617-18 (1st Cir. 1988).

Paragraphs 7, 12, 54, and 82 are quotes and references to editorials from news websites and blogs that do not purport to be facts material to the sufficiency of a claim, admissible evidence in support of a claim, or even material to the specific transaction, facts, or parties at issue in this case. Paragraphs 8, 9, 10, 11, and 81 are random opinions from press releases from a political advocacy group and a blog post from a politician in Kansas City, Missouri. These opinions do not purport to be facts material the sufficiency of any claim, admissible evidence in support of a claim, or even material to the specific transactions, facts, or parties at issue in this case. Paragraphs 7, 8, 9, 10, 11, 12, 54, 81, and 82 are plainly immaterial and impertinent, and should be stricken.

Paragraphs 7, 9, 11, 12, 13, 14, 15, and 16 are opinions and allegations attacking consumer payday loan transactions and attempts to impute and transfer the negative visceral reaction associated with the term "payday loan" onto Yellowstone solely for the purposes of besmirching Yellowstone's reputation and prejudicing Yellowstone. The transactions at issue in the instant litigation are commercial purchases of future receivables governed by the Uniform Commercial Code, and which have been consistently upheld and enforced by New York Courts.[5] Even

---

[5] New York Courts have consistently rejected Plaintiffs' usurious loan argument and have repeatedly held that such transactions are precisely what they purport to be, purchases and sales of future receivables, not usurious loans. *See Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 2017 N.Y. Misc. LEXIS 5355 (N.Y. Sup. Ct. June 15, 2017), *aff'd*, 2018 N.Y. App. Div. LEXIS 1648, 2018 NY Slip Op 01645 (N.Y. App. Div. March 15, 2018); *Merchant Cash & Capital, LLC v Liberation Land Co., LLC*, 2016 NY Slip Op 32589(U) (N.Y. Sup. Ct. 2016); *Merchant Cash & Capital, LLC v Yehowa Med. Servs., Inc.*, 2016 NY Slip Op 31590(U) (N.Y. Sup. Ct. 2016); *IBIS Capital Group, LLC v Four Paws Orlando LLC*, 2017 NY Slip Op 30477(U) (N.Y. Sup. Ct. 2017); *Chartock v National Bank of California*, 2017 NY Slip Op 30357(U) (N.Y. Sup. Ct. 2017); *LG Funding, LLC v Snowstar, Inc.*, 2017 NY Slip Op 32741(U) (N.Y. Sup. Ct. 2017); *Merchant Cash & Capital, LLC v Sogomonyan*, 2017 NY Slip Op 31111(U) (N.Y. Sup. Ct. 2017); *Merchant Cash & Capital, LLC v G&E Asian Am. Enter., Inc.*, 2016 NY Slip Op 31592(U) (N.Y. Sup. Ct. 2016); *Merchant Cash & Capital, LLC v Frederick & Cole, LLC*, 2016 NY Slip Op 32730(U) (N.Y. Sup. Ct. 2017); *K9 Bytes, Inc. v Arch Capital Funding, LLC*, 56 Misc. 3d 807 (N.Y. Sup. Ct. 2017); *Retail Capital, LLC v. Spice Intentions Inc.*, 2016 NY Slip Op 32614[U] (N.Y. Sup. Ct. 2016); *Merchant Cash & Capital, LLC v. Transfer Intl. Inc*, 2016 NY Slip Op 32395[U] (N.Y. Sup. Ct. 2016); *Merchant Cash & Capital, LLC v. Cramer E. Constr.*,

assuming *arguendo*, that the transaction could be recharacterized into something else, which it should not, random editorialized opinions and attacks about consumer payday loans from non-parties discussing other non-parties can never be material to the sufficiency of a claim, admissible evidence in support of a claim, or material to the specific transaction, facts, or parties at issue in this case. Moreover, random opinions and editorials from non-parties discussing a different type of transaction cannot be considered authority that might ever be pertinent to this case. Paragraphs 7, 9, 11, 12, 13, 14, 15, and 16 are plainly scandalous, immaterial, and impertinent, and should be stricken.

Finally, paragraphs 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 219, and 220 are immaterial, impertinent, and redundant allegations that Yellowstone, from years before any of the facts at issue in this case that Plaintiffs contend allegedly mention loan products on social media. None of these alleged hearsay statements are alleged to have been directed at Plaintiffs, received by Plaintiffs, or relied upon by Plaintiffs. Moreover, none of these alleged hearsay statements are alleged to be directed to the transaction in this case. Indeed, the allegations amount to, at most, an assertion that Yellowstone

---

2016 N.Y. Misc. LEXIS 4647 (N.Y. Sup. Ct. 2016); *Merchant Cash & Capital, LLC v. S. Jersey Speed LLC*, 2016 NY Slip Op 32591[U] (N.Y. Sup. Ct. 2016); *Merch. Cash & Capital, LLC v. Ethnicity Inc.*, 2016 NY Slip Op 32593[U] (N.Y. Sup. Ct. 2016); *Professional Merchant Advance Capital, LLC v. Your Trading Room, LLC*, 2012 NY Slip Op 33785[U] (Sup. Ct. Suffolk Cty. 2012), *aff'd on other grounds*, 123 A.D.3d 1101 (2d Dept. 2014); *Tate v. Natl. Bank of California*, 2016 NY Slip Op 32396[U] (N.Y. Sup. Ct. 2016); *Colonial Funding Network, Inc. v. Epazz, Inc.*, 252 F. Supp. 3d 274 (S.D.N.Y. 2017). These are high risk transactions where the buyer receives only a percentage of sale proceeds, which, as a result, means that if the seller's sale proceeds decline or halt entirely, the buyer may be entitled to nothing.

In fact, purchases and sales of future receivables have been consistently upheld and enforced in New York for more than 160 years. *Field v Mayor, etc., of New-York*, 6 N.Y. 179, 187 (N.Y. 1852)("courts of equity will support assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual existence, but rest in possibility only…."); *Speelman v Pascal*, 10 N.Y.2d 313 (N.Y. 1961); *Schaaf v. Borsher*, 82 A.D.2d 880 (N.Y. App. Div. 1981); *see, also,* Joseph Story, *Commentaries on Equity Jurisprudence as Administered in England and America* §1040 (9th ed. 1866).

may have offered or discussed other types of financial products in the past, which is plainly immaterial to whether the subject agreements in this case were loans or purchases of future receivables. Further, in paragraph 224, Plaintiffs' counsel attempts to impute wrongdoing on Yellowstone's CEO for allegedly harboring economically conservative political views. Such an allegation attacking Yellowstone's CEO is not only impertinent, immaterial, and improper, it is simply an attack on Yellowstone's CEO for his political views, which are in no way material to this case. Consequently, paragraphs 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 219, 220, and 224 should be stricken as impertinent and immaterial.

For the foregoing reasons, the Court should strike all of the foregoing paragraphs pursuant to Fed. R. Civ. P. 12(f).

## **CONCLUSION**

The Court should dismiss the Plaintiffs' Amended Complaint against Yellowstone because the claims are barred the doctrine of res judicata, the Plaintiffs have failed to plead a claim, failed to plead with the requisite factual particulars, dismiss this action due to the forum selection clauses in the parties' agreements or, alternatively, transfer this action to the United States District Court for the Southern District of New York. Further, the Court should strike the more than one hundred immaterial, impertinent, redundant, and scandalous allegations gratuitously inserted into the Amended Complaint by the Plaintiffs.

Respectfully submitted,

YELLOWSTONE CAPITAL LLC,
YITZHAK STERN, and TSVI DAVIS,

By their attorneys,

Dated: March 26, 2018

/s/Andrea L. Martin, Esq.
Andrea L. Martin (BBO #666117)
amartin@burnslev.com
Mark Schonfeld (BBO # 446980)
mschonfeld@burnslev.com
BURNS & LEVINSON LLP
125 Summer Street
Boston, MA 02110-1624
Telephone: 617-345-3000
Facsimile: 617-345-3299

Adam J. Stein, *Admitted Pro Hac Vice*
astein@steinadlerlaw.com
Christopher R. Murray, *Admitted Pro Hac Vice*
cmurray@steinadlerlaw.com
STEIN ADLER LLP
60 Broad Street, Suite 2408
New York, NY 10004
Telephone: 212-867-5620

## CERTIFICATE OF SERVICE

I, Andrea L. Martin, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 26, 2018.

/s/Andrea L. Martin, Esq.

Andrea L. Martin, Esq.