UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NRO BOSTON, NRO EDGARTOWN, JASON INDELICATO, and ALICE INDELICATO,<br><br>Plaintiffs,<br><br>v.<br><br>YELLOWSTONE CAPITAL LLC, MCA RECOVERY LLC, and VADIM BARBAROVICH,<br><br>Defendants. | Civil Action No. 1:18-cv-10060<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiffs NRO Boston, NRO Edgartown (collectively "NRO" or the "Corporate Plaintiffs") Jason Indelicato, and Alice Indelicato (the "Indelicatos"), as and for this complaint and demand for a trial by jury against defendants Yellowstone Capital, LLC ("Yellowstone"), MCA Recovery LLC ("MCA Recovery"), and Vadim Barbarovich ("Barbarovich"), allege as follows:

## THE PARTIES

1. Plaintiff NRO Boston, LLC is a Massachusetts corporation with its principal place of business located at 35 Central Street, Wellesley, Massachusetts 02482. Each of its LLC members is a citizen of Massachusetts.

2. Plaintiff NRO Edgartown, LLC is a Massachusetts corporation with its principal place of business located at 4 Dock Street, Edgartown, Massachusetts 02539. Each of its LLC members is a citizen of Massachusetts.

3. Plaintiffs Alice and Jason Indelicato are individuals who are citizens of Massachusetts and reside at 3 Oakdale Lane, Edgartown, Massachusetts 02539.

22275603v.2

4. Defendant Yellowstone Capital, LLC is a limited liability company duly organized and existing under the laws of the State of New Jersey with its principal offices located at 1 Evertrust Plaza, Jersey City, New Jersey 07302.

5. Yellowstone's sole LLC member is a New Jersey citizen.

6. Defendant MCA Recovery, LLC, is a limited liability company organized and existing under the laws of the State of New York with a Registered Agent and DOS Process address c/o Business Filings Incorporated, 187 Wolf Road, Albany, New York 12205.

7. The website for MCA Recovery lists its contact information as 17 State Street, Suite 4000, New York, New York 10004.

8. Each of MCA Recovery LLC's members is a New York citizen.

9. Barbarovich is a marshal for the City of New York and his badge no. is 8.

10. He maintains an office at 1517 Voorhies Avenue, Suite 3R, Brooklyn, New York, 11235.

## JURISDICTION AND VENUE

11. Yellowstone is subject to the personal jurisdiction of this Court under the Mass. Gen. L. ch. 223A § 3(a) and (c).

12. MCA Recovery is subject to the personal jurisdiction of this Court under the Mass. Gen. L. ch. 223A § 3(a) and (c).

13. Barbarovich is subject to the personal jurisdiction of this Court under Mass. Gen. L. ch. 223A § 3(a) and (c).

14. Yellowstone, MCA Recovery, and Barbarovich directed a levy and demand to a bank wholly located within the Commonwealth of Massachusetts to collect upon a New York judgment.

15. Yellowstone, MCA Recovery, and Barbarovich failed to domesticate the New York judgment.

16. Financial harm resulted from this collection attempt Yellowstone, MCA Recovery, and Barbarovich.

17. That financial harm was sustained in Massachusetts.

18. This action was originally filed in the Massachusetts Superior Court and removed by Defendants to this Court.

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 as this is a controversy between citizens of different states where damages exceed $75,000.

## FACTS

### *The New York Judgment*

20. Yellowstone obtained a judgment against NRO Edgartown, LLC, d/b/a NRO Edgartown, Jason Indelicato, and Alice Indelicato from the Supreme Court of New York, County of Rockland, Index No. 034003/2016 ("NRO Edgartown Judgment").

21. The NRO Edgartown was the result of a Confession of Judgment signed by Plaintiffs.

22. The NRO Edgartown Judgment totaled $854,695.90.

23. NRO and the Indelicatos had provided their banking information to Yellowstone as part of their earlier business dealings.

*Collection attempt regarding the Edgartown judgment*

24. On December 12, 2016, Defendant Barbarovich served a Levy and Demand on First Commons Bank.

25. At that time, First Commons Bank was located at 718 Beacon Street, Newton, Massachusetts 02459.

26. At that time, First Commons Bank, N.A. was a federally chartered bank.

27. First Commons Bank, N.A. had only two locations, both located exclusively within the Commonwealth of Massachusetts.

28. On information and belief, First Commons Bank, N.A. did not have an agent for service of process in New York.

29. On information and belief, First Commons Bank, N.A. could only be served in Massachusetts.

30. The "Levy and Demand" served on First Commons Bank was dated December 12, 2016. It read: "Attached you will find a Property Execution with Notice to Garnishee. As directed under CPLR *5232(a)*, you are required to turn over to me all property of the judgment Debtor currently in your possession or custody, not to exceed the following amount:"

31. Below those sentences appeared a box indicating a total of $872,491.12.

32. Included in the total Levy and Demand was a $41,547.20 amount for "poundage."

33. The "poundage" amount is Barbarovich's fee for collecting the debt.

34. The Levy and Demand was signed by Vadim Barbarovich.

35. The Levy and Demand describes Barbarovich as "Marshal City of New York" and "Badge No. 8."

36. An image of Barbarovich's marshal badge appears on the top of the letterhead used for the Levy and Demand.

37. A document entitled "Execution With Notice to Garnishee" accompanies the Levy and Demand.

38. The Execution With Notice to Garnishee reads "To: First Commons Bank" and lists as the bank's address "718 BEACON ST [line break] Newton, Massachusetts 02459."

39. The Notice to Garnishee further reads "NOW, THEREFORE, YOU ARE REQUIRED by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the sheriff all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession or custody including any property specified in this notice; and to pay to the sheriff, upon maturity, all debts now due or hereafter coming due from you to the judgment debtor, including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment."

40. The Notice to Garnishee is signed by an attorney, whose signature block states:

> *Attorney for Judgment Creditor,*
> *YELLOWSTONE CAPITAL LLC*
> 17 State Street, Suite 4000
> New York, New York 10004
> Tel: (646)774-3308

41. The address in the attorney's signature block on the Notice to Garnishee (17 State Street, Suite 4000, New York, New York) is the same address MCA Recovery lists on its website.

42. At the time this execution was sent in December 2016, the attorney named on the Notice to Garnishee was managing attorney of MCA Recovery.

43. The Linked-In profile of this attorney lists her as "Managing Attorney" at MCA Recovery from November 2015 – Present.

44. The Linked-In profile of this attorney also lists her as "Corporate Counsel" to Yellowstone Capital from October 2018 – Present.

45. On information and belief, Yellowstone hired MCA Recovery to conduct collections against NRO and the Indelicatos.

46. On information and belief, the attorney whose name appears in the signature block was acting at the direction of Yellowstone in signing this Notice to Garnishee.

47. On information and belief, Yellowstone was aware that the NRO assets held by First Commons Bank were located wholly in Massachusetts.

48. On information and belief, MCA Recovery was aware that the NRO assets held by First Commons Bank were located wholly in Massachusetts.

*Barbarovich authority*

49. The New York City Marshals Handbook of Regulations provides, "[A] marshal's jurisdiction and authority to serve executions against personal property, as well as other mandates and processes, extends through and is limited to the geographical boundaries of the City of New York."

50. The New York City Marshals Handbook of Regulations provides that, to effect a levy on a bank account, "a levy is made by serving a copy of the execution on the garnishee."

51. The New York City Marshals Handbook of Regulations provides that "Service on a corporation must be made according to the provisions of (s) 311 of the CPLR; that is, by personally serving (in-hand) an officer or other agent of the corporation. Under no

circumstances may service be made by mailing a copy of the execution to the corporate garnishee."

52. The New York City Marshals Handbook of Regulations provides that "Service of the execution is to be made in the same manner as the service of a summons."

### *First Commons Bank Accounts*

53. As of December 2016, NRO Boston LLC had two "Platinum Business Checking" accounts with First Commons Bank.

54. The account ending in 0007 was the "Primary" account.

55. The account ending in 5550 was the "Payroll" account.

56. First Commons Bank received the Levy and Demand on December 21, 2016.

57. First Commons Bank froze the accounts ending in 5550 and 0007 when it received the Barbarovich Levy and Demand directed at NRO Edgartown and the individual Indelicatos.

58. Plaintiffs hired attorney Michael Pierce to assist them in regaining access to the First Commons accounts.

59. NRO Edgartown, LLC, NRO Boston, LLC, Jason Indelicato (individually), and Alice Indelicato (individually) all signed a release of First Commons Bank and agreed to indemnify First Commons Bank in exchange for the unfreezing of the account.

60. As a condition precedent to First Commons Bank's willingness to accept indemnity from NRO Edgartown, LLC, NRO Boston, LLC, Jason Indelicato (individually), and Alice Indelicato (individually), the Bank required that the both Jason Indelicato (individually), and Alice Indelicato (individually) execute and a personal guaranty to First Commons Bank.

61. Alice Indelicato and Jason Indelicato each signed a "Limited Personal Guaranty" on December 22, 2016.

### *Damages From the Edgartown Levy and Demand*

62. These events irreparably damaged NRO's relationship with First Commons.

63. The frozen funds in the First Commons "Primary" account were intended to be used to purchase inventory for the store for the Christmas shopping season.

64. During the Christmas shopping season, money used to purchase inventory could generate a 50% return within one business day.

65. For example, $100 invested in inventory would generate $150 in sales within one day.

66. This money, in turn, was to be reinvested in inventory, again generating sales the following day.

67. Here, both the "Primary" and "Payroll" accounts were frozen for several days in the week before Christmas.

68. Each day was an opportunity to turn every dollar used for inventory into two dollars of sales.

69. Therefore, the sum of the restrained funds could have been doubled in sales after one day, doubled again in sales after two days, and doubled again in sales after three days.

70. The restraint of the funds in the First Commons Bank accounts also cost NRO a vital relationship with a major supplier.

71. Patagonia is a well-known and respected brand of outdoor gear.

72. NRO had a relationship with Patagonia and was able to sell Patagonia merchandise through its online store.

73. Selling Patagonia merchandise was an extremely lucrative part of NRO's business.

74. In March 2016, for instance, NRO processed a $61,000 Patagonia order, more than half of NRO's total online sales.

75. At the time the First Commons Bank accounts were frozen in December 2016, NRO had over a hundred pending Patagonia orders that had been made by customers but not yet filled.

76. When the First Commons Bank accounts were frozen, NRO was unable to fulfill those orders promptly.

77. Prompt service is critical during the Christmas shopping season.

78. One customer whose order was not filled promptly complained directly to Patagonia.

79. Following this incident, Patagonia severed its relationship with NRO.

80. NRO lost a lucrative relationship marketing Patagonia goods.

81. As a result of the fulfillment of customers' orders being delayed (either with Patagonia products or other products), NRO lost customer good will.

### *Meritorious defenses could have been raised*

82. Yellowstone and Barbarovich's circumvention of the Massachusetts court system deprived NRO of the opportunity to raise valid Massachusetts law defenses.

83. The Massachusetts Superior Court has previously disapproved attempts to make collections in Massachusetts without the proper process of domesticating the judgment.

84. On September 27, 2017, the Massachusetts Superior Court (Wilson, J.) issued a Decision and Order holding that an Information Subpoena with Restraining Notice issued out of

-9-
22275603v.2

New York "is unenforceable in Massachusetts" and enjoined all collection efforts on a Judgment by Confession issued by a New York state court "until a Massachusetts court permits…such actions in Massachusetts." *Seuss v. Richmond Capital Group*, 2017SUCV-2824.

85. In two previous cases involving NRO, Massachusetts courts have permitted NRO to raise its substantive and procedural defenses to the domestication of New York judgments based on MCA agreements and obtained through the vehicle of a confession of judgment. See Saturn Financing v. North River Outfitters, 2016SUCV-2522 and 2016SUCV-2523.

86. But for the direct levy, plaintiffs would not have incurred many or all of the damages above, including lost Christmas season revenue (NRO Boston), loss of goodwill (NRO Boston), attorney time relating to the unfreezing of the account (all four plaintiffs).

## FIRST CAUSE OF ACTION

### (Conversion – Against Yellowstone and Barbarovich)

87. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs.

88. By restraining NRO Boston's funds as described above, Yellowstone exercised control and dominion over NRO Boston's funds.

89. By restraining NRO Boston's funds as described above, Barbarovich exercised control and dominion over NRO Boston's funds.

90. As owners of NRO, the Indelicatos had an ownership interest in NRO's funds.

91. NRO Boston was damaged by the restraint of funds held in the First Commons Bank accounts.

92. The Indelicatos personally were damaged by the restraint of funds held in the First Commons Bank accounts.

93. All four plaintiffs were required to obtain counsel to have the funds released.

94. Yellowstone and Barbarovich are jointly-and-severally liable for all damages suffered by plaintiffs.

## SECOND CAUSE OF ACTION

### (Trespass to Chattel – Against All Defendants)

95. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs.

96. The funds in the First Commons Bank account belonged to NRO Boston.

97. As owners of NRO Boston, the Indelicatos also had an ownership interest in NRO Boston's funds.

98. Defendants intentionally interfered with NRO Boston's use and possession of these funds.

99. Neither NRO Boston nor the Indelicatos consented to defendants' extraterritorial use of the New York City Marshall's Levy and Demand.

100. Neither NRO Boston nor the Indelicatos consented to defendants' freezing of the First Commons Bank account.

101. All four plaintiffs were required to obtain counsel to have the funds released.

102. Defendants are jointly-and-severally liable for the resulting damage to plaintiffs.

## THIRD CAUSE OF ACTION

### (Fraud – Against Barbarovich)

103. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs.

104. Barbarovich's Notice and Demand to First Commons Bank contained false statements of fact.

105. On information and belief, Barbarovich knew those statements to be false.

106. On information and belief, Barbarovich knew that his territorial authority was limited to the five boroughs of New York.

107. On information and belief, Barbarovich knew that First Commons Bank was not within the five boroughs of New York.

108. The Levy and Demand states "NOW, THEREFORE, YOU ARE REQUIRED by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the sheriff all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession or custody including any property specified in this notice; and to pay to the sheriff, upon maturity, all debts now due or hereafter coming due from you to the judgment debtor, including any debts specified in this notice; and to execute any documents necessary to effect such transfer or payment."

109. This statement is untrue.

110. Barbarovich made the statement quoted above with the intent that First Commons Bank rely on that statement.

111. Barbarovich made the statement quoted above with the intent that the Indelicatos rely on that statement.

112. First Commons Bank reasonably relied on these statements to plaintiffs' detriment.

113. All four plaintiffs were required to obtain counsel to have the funds released.

## FOURTH CAUSE OF ACTION

**(Wrongful Execution by Wrongful Act– Against all Defendants)**

114. Plaintiffs repeat and re-allege the allegations of each of the foregoing paragraphs.

115. Defendants engaged in wrongful execution when they attempted to collect on the New York judgment against NRO and the Indelicatos.

116. Persons who procure, direct, or assist in the commission of a wrongful act by an officer in issuing an execution, or in making a levy or sale thereunder, are liable to the person injured by the act.

117. Defendants committed two wrongful acts in the course of arranging for the Levy and Demand to be served upon First Commons Bank.

118. First, Yellowstone and MCA Recovery directed Barbarovich to issue a Levy and Demand that was outside of Barbarovich's territorial authority as a New York City Marshall.

119. Second, defendants failed to domesticate the judgment pursuant to M. G. L. c. 235, sec. 14.

120. NRO Boston lost Christmas season revenue and goodwill (including damaged customer relationships and a lost supplier relationship) as a result.

121. NRO Boston's loss resulted in financial damage to its owners, Jason and Alice Indelicato.

122. All four plaintiffs were required to obtain counsel to have the funds released.

123. Defendants are jointly-and-severally liable for the resulting damage to plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs seek an order from this Court:

a) Granting an injunction against Defendants permanently restraining them from causing a Levy and Demand to be issued upon any entity or person outside the jurisdictional limit of New York City;

b) Granting an injunction against Defendant permanently restraining them from causing an Information Subpoena and Restraining Notice to be issued upon any entity or person outside the jurisdictional limit of the State of New York;

c) Granting an injunction against Defendants Yellowstone and MCA recovery permanently restraining them from making any attempt to collect upon the New York judgment against NRO without first domesticating the judgment as required by M. G. L. c. 235, § 14;

d) Awarding Plaintiffs direct and consequential damages in an amount to be determined a trial, including prejudgment interest; and

e) Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues properly so tried.

Dated: February 19, 2019  NRO BOSTON, NRO EDGARTOWN, JASON INDELICATO, and ALICE INDELICATO,

By their attorneys,

*/s/Rachel Eisenhaure*
Shane R. Heskin  (BBO # 665098)
Rachel J. Eisenhaure (BBO # 663876)
WHITE AND WILLIAMS LLP
101 Arch Street, Suite 1930
Boston, MA  02110
Tel.:  617.748.5200
heskins@whiteandwilliams.com

-14-

-15-

eisenhaurer@whiteandwilliams.com

## CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing this 19th day of February 2019.

                                                */s/ Rachel J. Eisenhaure*
                                                Rachel J. Eisenhaure

22275603v.2