UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NRO BOSTON, LLC, | * | |
| NRO EDGARTOWN, LLC, | * | |
| JASON INDELICATO, and | * | |
| ALICE INDELICATO, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:18-cv-10060-IT |
| | * | |
| YELLOWSTONE CAPITAL LLC, | * | |
| MCA RECOVERY LLC, and | * | |
| VADIM BARBAROVICH, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 28, 2020

TALWANI, D.J.

Plaintiffs NRO Edgartown, LLC ("NRO Edgartown"), NRO Boston, LLC ("NRO Boston"

and, collectively with NRO Edgartown, "NRO"), Jason Indelicato, and Alice Indelicato assert in

their Second Amended Complaint [#123] that Defendants Yellowstone Capital LLC

("Yellowstone") and MCA Recovery LLC ("MCA Recovery" and, collectively with Yellowstone,

the "LLC Defendants") caused Defendant Vadim Barbarovich, a New York City Marshal, to serve a

New York state "Levy and Demand" and an "Execution with Notice to Garnishee" on a bank in

Massachusetts holding assets of NRO Edgartown, Jason Indelicato and Alice Indelicato, without

first domesticating the underlying New York state judgment. Plaintiffs allege that this act induced

the bank to freeze NRO Boston's accounts, causing economic injury to all four Plaintiffs. They

assert claims of: 1) Conversion against Yellowstone and Barbarovich; 2) Trespass to Chattel against

all Defendants; 3) Fraud against Barbarovich; and 4) Wrongful Execution by Wrongful Act against

all Defendants.

Pending before the court are Defendant Barbarovich's Motion to Dismiss the Second

Amended Complaint [#127] and the LLC Defendants' Motion to Dismiss the Second Amended

Complaint, or Transfer Venue to the Southern District of New York [#130].

After reviewing the parties' filings, and for the reasons set forth below, the court GRANTS

Barbarovich's Motion to Dismiss [#127] for lack of personal jurisdiction and GRANTS in part and

DENIES in part the LLC Defendants' Motion to Dismiss or Transfer Venue [#130].

I.    Procedural History

Plaintiffs originally filed suit in Massachusetts Superior Court for Suffolk County against a

number of parties, including the LLC Defendants and Barbarovich, asserting federal and state

claims tied to merchant cash advance agreements entered into by Plaintiffs. State Ct. R. 9-59 [#9].

Defendants removed the case to federal court, Notice of Removal [#1], and the court subsequently

granted Defendants' motions to dismiss the original complaint, see Dec. 7, 2018 Hr'g Tr. [#108],

and Plaintiffs' motion for leave to amend their complaint limited to claims related to Defendants'

collections efforts. Elec. Order [#118]; see also Feb. 5, 2019 Hr'g Tr. [#120]. Plaintiffs filed their

Second Amended Complaint [#123] and the pending motions to dismiss followed. As Defendants

submitted extrinsic evidence on the issue of whether Plaintiffs could establish causation or damages

resulting from Defendants' alleged conduct, the court converted the pending motions to motions for

summary judgment as to that discrete issue and allowed submission of supplemental evidence. See

Mar. 3, 2020 Hr'g Tr. 32-34 [#152].

II.    Facts Alleged in the Second Amended Complaint

NRO Edgartown and NRO Boston are Massachusetts limited liability companies owned by

Jason and Alice Indelicato, who are Massachusetts residents. Second Am. Compl. ("SAC") ¶¶ 1-3,

90 [#123]. Yellowstone is organized in New Jersey, with its sole member a New Jersey citizen, and

MCA Recovery is organized in New York, with New York citizens as members. Id. ¶¶ 4-8. Vadim

2

Barbarovich is a marshal for the City of New York. Id. ¶ 9.

As a result of Confessions of Judgment signed by Plaintiffs, Yellowstone obtained a Judgment from the Supreme Court of New York, County of Rockland, against NRO Edgartown and the Indelicatos for $854,695.90. Id. ¶¶ 20-22. Yellowstone subsequently obtained an execution in New York for this amount, reporting at the time that it had received $40,500 towards satisfaction of the judgment. Bukhman Aff. in Supp. of Req. for Execution 11 ¶ 1 [#133-3].

On December 12, 2016, Yellowstone's counsel, Renata Bukhman, prepared and signed a Notice to Garnishee First Commons Bank ("First Commons"), setting forth the bank's address in Newton, Massachusetts. SAC ¶¶ 30, 37-38, 40 [#123].[1] The Notice stated that "NOW, THEREFORE, YOU ARE REQUIRED by section 5232(a) of the Civil Practice Law and Rules forthwith to transfer to the sheriff all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession . . ." Id. ¶ 39. The notice identified the judgment debtors as NRO Edgartown, LLC, Jason Indelicato and Alice Indelicato.

Attorney Bukhman was, at the time, the managing attorney of MCA Recovery and corporate counsel to Yellowstone, id. ¶¶ 42-44, and Yellowstone hired MCA Recovery to conduct collections against NRO Edgartown and the Indelicatos. Id. ¶ 45. At that time, First Commons had only two locations, both located in Massachusetts, and both Yellowstone and MCA Recovery were aware that NRO assets held by First Commons were located wholly in Massachusetts. Id. ¶¶ 27, 47-48.

On December 12, 2016, Barbarovich served on First Commons the papers signed by Attorney Bukhman, along with a Levy and Demand signed by Barbarovich which stated that he was

---

[1] NRO Edgartown, NRO Boston and the Indelicatos had provided their banking information to Yellowstone. Id. ¶ 23.

acting as a New York City marshal. Id. ¶¶ 24, 35. Barbarovich's Levy and Demand stated, "[a]s

directed under CPLR 5232(a), you are required to turn over to me all property of the judgment

Debtor currently in your possession or custody, not to exceed the following amount[.]" Id. ¶ 30. The

total amount listed was $872,491.12 and included judgment of $814,195.90, plus additional interest,

fees, expenses, and a "poundage fee" of $41,547.20. Id. ¶¶ 32-33; Levy and Demand 1 [#133-3].

The Levy and Demand and the Notice to Garnishee were served without first domesticating

the New York judgment in Massachusetts. Id. ¶ 15.

On December 21, 2016, First Commons received the Levy and Demand and attached

documents. Id. ¶ 56. In response, the bank froze two of NRO Boston's checking accounts. Id. ¶¶ 53-

57. Plaintiffs hired Attorney Michael Pierce and First Commons required all four Plaintiffs to sign

an indemnification release and required the Indelicatos to execute a personal guaranty with the bank

to unfreeze the accounts. Id. ¶¶ 58-60. As a result of the account restraints, Plaintiffs were unable to

purchase additional inventory and lost sales. Id. ¶¶ 63-69. The events also harmed Plaintiffs' good

will with First Commons and with NRO customers. Id. ¶¶ 62, 81. Following this incident,

Patagonia, which supplied inventory to NRO, severed its relationship with NRO. Id. ¶¶ 71-80.

III.     Additional Facts Relating to Personal Jurisdiction

The LLC Defendants attest that neither Yellowstone nor MCA Recovery has a presence, or

conducts business, in Massachusetts, and none of their members live in the state. Reece Decl. ¶ 6

[#132]; Chasin Decl. ¶ 11 [#133]. Barbarovich attests he has never done business in Massachusetts

and has not traveled to the state in over ten years. Barbarovich Aff. ¶ 3 [#129].

On or about December 12, 2016, the LLC Defendants delivered the New York judgment,

and the Execution and Notice to Garnishee to Barbarovich to serve on First Commons. Id. ¶ 6. The

Marshal served the documents along with his Levy and Demand on First Commons' agent for

4

service of process, Corporation Service Company ("CSC"), on December 13, 2016, at its New York City office. Id. ¶ 7. CSC accepted the documents without objection. Id.

IV.  Additional Facts Relating to Causation and Damages from the Summary Judgment Record

On December 21, 2016, Jason Indelicato visited First Commons to deposit money in NRO Boston's operating bank account. Indelicato Decl. ¶¶ 3-4 [#155]. A First Commons employee told Indelicato that the account was frozen and showed him the packet sent by Defendants to the bank. Id. ¶¶ 5-6. Indelicato took pictures of the documents and sent them to his attorney, Michael Pierce. Id. ¶¶ 6-8.

Jason Indelicato also texted Oscar Moreno, a First Commons vice president. Id. ¶ 9. Moreno responded at 4:33 p.m., stating that he was in touch with Pierce and that the bank would "release holds" if Jason Indelicato and his attorney would indemnify the bank. Id. In the meantime, Attorney Pierce contacted First Commons' outside counsel, Eric Magnuson of Nutter McClennen & Fish. Pierce Decl. ¶ 5 [#156].

The next morning, Jason Indelicato logged onto First Commons' online banking platform to view NRO Boston's accounts, which had large negative balances, equaling the amount that had been in the account minus the amount of the levy. Indelicato Decl. ¶ 11 [#155]. Around the same time, Attorney Pierce drafted a proposed release and Indelicato emailed it to Moreno at 8:46 a.m. from the NRO Boston email account. Indelicato Decl. ¶ 14 [#155]; 8:46 a.m. Email [#155-4]. Pierce then emailed Attorney Magnuson a draft at 10:22 a.m., along with information about the Indelicatos' available assets. Pierce Decl. ¶ 6 [#155]; 10:22 a.m. Email [#156-1]. The attorneys traded drafts during the day and the bank attached a draft indemnification letter for Plaintiffs to sign, which began as follows:

On December 21, 2016, First Commons Bank, N.A., (the "Bank") was served

5

> with a Levy and Demand issued by Yellowstone Capital, L.L.C., a New York
> limited liability corporation regarding an attachment (the "Attachment") for
> $872,491.12 against NRO Edgartown, LLC, Jason Indelicato, and Alice
> Indelicato. The undersigned understand that the Bank temporarily placed a hold
> on funds held in the accounts of NRO Edgartown, LLC, Jason Indelicato, Alice
> Indelicato as well as NRO Boston, LLC (the "Accounts").
>
> Subject to the terms of this letter and the receipt of each Guaranty (as defined
> below), the Bank will immediately release the hold on the Accounts.

2:51 p.m. Email [#156-2].[2] The bank also drafted a "personal guaranty" which stated that "NRO

Edgartown, LLC, NRO Boston, LLC, and Jason Indelicato . . . [have] agreed to indemnify and hold

[First Commons] harmless," defining the three parties as "Indemnitors." 4:09 p.m. Email [#156-3].

The guaranty further stated that Jason Indelicato and Alice Indelicato were "Guarantors" as they

had "a substantial ownership interest in each Indemnitor and will receive substantial direct and

indirect financial benefits from the accomodation that the Bank is making to the Indemnitors in

reliance upon the Indemnities and this Guaranty." Id.

Jason and Alice Indelicato executed the negotiated release letter and personal guaranties at

around 5:00 p.m. and Pierce forwarded the documents to First Commons. Pierce Decl. ¶ 12 [#156];

5:28 p.m. Email 3 [#156-4]; Indelicato Decl. ¶ 15 [#155]. In response, Attorney Magnuson

informed Pierce that "Operation unfreeze is underway." 5:28 p.m. Email 1 [#156-4].

At some point on December 22, 2016, Attorney Magnuson also sent a letter to

Yellowstone's attorney, Renata Bukhman. The letter read in relevant part:

> We have reviewed the enclosed "Levy and Demand" package. Please note that,
> "to execute on a foreign judgment in Massachusetts, the plaintiff must have a
> Massachusetts judgment." Please further note that there are no accounts at First
> Commons Bank corresponding to the accounts identified in the Notice to
> Garnishee.

---

[2] Attorney Pierce originally drafted some of the quoted language. 8:46 a.m. Email [#155-4]. The
bank adopted this language in their draft and made edits to it. See 2:51 p.m. Email [#156-2].

First Commons Letter [#133-4] (quoting in part <u>Smith Barney, Harris Upham & Co v. Connolly</u>, 887 F. Supp. 337, 344 (D. Mass. 1994)).

First Commons removed the freeze on NRO Boston's accounts on December 23, 2016. Indelicato Decl. ¶ 16 [#155]. Jason Indelicato attests the freeze of the NRO Boston accounts "disrupted our 2016 Christmas season," but offers no further details as to the sales allegedly lost due to the freeze. <u>Id.</u>

V.    <u>Discussion</u>

A.  <u>Personal Jurisdiction</u>

Defendants assert this court lacks personal jurisdiction and therefore must dismiss the case. Plaintiffs contend the court has specific personal jurisdiction based on Defendants' conduct directed into Massachusetts. Pls' Combined Opp'n to Defs' Mots. to Dismiss ("Pls' Opp'n") 17 [#136].[3]

1.  Standard

To establish specific personal jurisdiction in a diversity jurisdiction suit, "a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." <u>C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.</u>, 771 F.3d 59, 65 (1st Cir. 2014).

For the Due Process Clause, the court considers 1) whether the claims arise out of, or relate to, each defendant's in-state activities ("relatedness"), 2) whether the defendant has purposefully availed itself of the laws of the forum state ("purposeful availment"), and 3) whether exercise of jurisdiction is reasonable under the circumstances ("reasonableness"). <u>Nowak v. Tak How Invs.</u>,

---

[3] Plaintiffs make no argument that the court retains general jurisdiction over Defendants, nor do they contradict Defendants' showing that Defendants do not have sufficient contacts with Massachusetts to establish general jurisdiction. <u>See, e.g.,</u> Reece Decl. ¶ 6 [#132]; Chasin Decl. ¶ 11 [#133]; Barbarovich Aff. ¶ 3 [#129].

Ltd., 94 F.3d 708, 712-13 (1st Cir. 1996). Relatedness, in tort cases, is shown if there is a "sufficient causal nexus between [the defendant's contacts] with [the forum] and [plaintiff's] causes of action." Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 7 (1st Cir. 2002) (internal quotation marks omitted). A defendant "need not be physically present in the forum state to cause injury (and thus 'activity' for jurisdictional purposes) in the forum state." N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005). For purposeful availment, courts consider whether "a defendant deliberately targets its behavior toward the society or economy of a particular forum." Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011). The focus is "on the defendant's intentions." Id. Last, in considering the reasonableness of asserting personal jurisdiction, the court looks to "gestalt factors" such as 1) defendant's burden of appearing in the forum state, 2) the forum state's interest in adjudicating the dispute, 3) the plaintiff's interest in obtaining convenient and effective relief, 4) the judicial system's interest in obtaining the most effective resolution of the controversy, and 5) the common interests of all sovereigns in promoting substantive social policies. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016) (citing C.W. Downer, 771 F.3d at 69).

The reach of Massachusetts' long-arm statute, M. G. L. c. 223A, is not coextensive with what due process allows under the federal Constitution. See SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 330 n.9 (2017). For the statutory provisions on which  Plaintiffs rely, § 3(a) or § 3(c), the court has personal jurisdiction over a person "who acts directly or by an agent, as to a cause of action . . . arising from the person's (a) transacting any business in this commonwealth [or] . . . (c) causing tortious injury by an act or omission in the commonwealth." M. G. L. c. 223A, §§ 3(a), (c).

For its jurisdictional analysis, a court may use the prima facie standard, considering whether "facts duly proffered, fully credited, support the exercise of personal jurisdiction." Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997). The plaintiff bears the burden to show that

personal jurisdiction exists over each defendant. United States v. Swiss Am. Bank, Ltd., 274 F.3d

610, 618 (1st Cir. 2001). "To meet this requirement, the plaintiff must 'go beyond the pleadings and

make affirmative proof.'" Id. (quoting United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant

St. Corp., 987 F.2d 39, 44 (1st Cir. 1993) (Pleasant St. II); see also Phillips v. Prairie Eye Ctr., 530

F.3d 22, 26 (1st Cir. 2008) (stating plaintiff asserting jurisdiction cannot rest upon the pleadings but

is "obliged to adduce evidence of specific facts") (internal citation omitted). "[I]n evaluating

whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder;

rather, it accepts properly supported proffers of evidence by a plaintiff as true . . ." Swiss Am., 274

F.3d at 619 (quoting Pleasant St. II, 987 F.2d at 44). The court "then add[s] to the mix facts put

forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law at

Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998).

    2.  Application

        a.  LLC Defendants

The court finds that Plaintiffs have satisfied the prima facie standard for personal

jurisdiction over the LLC Defendants for the alleged torts committed in, and causing injury in,

Massachusetts.

Plaintiffs' claims relate to the LLC Defendants' actions targeted into Massachusetts.

Plaintiffs have pointed to evidence that the LLC Defendants directed documents to Plaintiffs'

Massachusetts bank, seeking to induce the bank to turn over Plaintiffs' property without

domesticating the judgment in Massachusetts first, and therefore causing Plaintiffs injury. And the

LLC Defendants' jurisdictional evidence does not disturb the prima facie showing. Although the

LLC Defendants did not personally enter Massachusetts to deliver the documents to the bank, the

plain language of the Notice to Garnishee and attached documents show that the LLC Defendants

"purposefully directed [their] activities at residents of the forum." <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471-72 (1985). The documents, signed by the LLC Defendants' counsel, are addressed, in multiple places, to First Commons Bank located at 718 Beacon Street in Newton, Massachusetts. Notice to Garnishee [#133-4]. And on the "Endorsement" page to the Notice to Garnishee, the "Location of the Property" is listed at "First Commons Bank" at the same Beacon Street address. <u>Id.</u> Thus, it is manifest that Defendants intended the documents to be delivered into Massachusetts to reach property located there and took direct action to bring about that outcome.

The LLC Defendants also facially intended to derive material benefit from their actions directed into Massachusetts. They sought, by sending the documents, to "require" First Commons to turn over Plaintiffs' property to them. <u>Id.</u> As a result, Defendants' intentional contacts with Massachusetts "proximately result from actions by the defendant[s] [themselves]," <u>Burger King</u>, 471 U.S. at 475, and therefore Defendants could have "reasonably anticipate[d] being haled into court" in Massachusetts. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).[4]

Finally, the gestalt factors weigh in favor of exercising personal jurisdiction. The LLC Defendants do not face a large burden in appearing in Massachusetts, most witnesses and relevant evidence as to the collections effort are located in the forum, and Massachusetts has a strong interest in torts committed within its borders. Accordingly, asserting personal jurisdiction under the federal constitution is appropriate.

The court also has personal jurisdiction over the LLC Defendants under § 3(c) of the Massachusetts long-arm statute, M. G. L. c. 223A. Courts have held that out-of-state defendants

---

[4] This is true for MCA Recovery, as well Yellowstone, as MCA Recovery agrees it acted as "agent for Yellowstone" and "provided the Marshal with an Execution to serve on a third-party garnishee," First Commons. Chasin Decl. ¶ 5 [#133].

who knowingly send false representations into Massachusetts with the intent that they be relied on to the detriment of a Massachusetts resident are subject to personal jurisdiction under § 3(c) as they have therefore acted tortiously within the state. See Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972) ("Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state."); The Scuderi Group, LLC v. LGD Tech., LLC, 575 F. Supp. 2d 312, 320 (D. Mass. 2008). Here, where the LLC Defendants intended that the documents reach Massachusetts to garnish property in Massachusetts, it therefore makes little difference, for the purposes of § 3(c), that they intentionally caused the documents to be delivered to Massachusetts via Barbarovich and a registered agent, as opposed to via the postal service. The former meets the § 3(c) standard. There is no suggestion in the record that the LLC Defendants thought Plaintiffs' property was located in New York or that they could successfully collect on the judgment without the documents reaching Massachusetts and without First Commons' Massachusetts-based employees acting to comply with the Notice to Garnishee.

Accordingly, as due process considerations and the requirements of the Massachusetts long-arm statute are satisfied, the court finds it has personal jurisdiction over the LLC Defendants.

b.   Defendant Barbarovich

Barbarovich argues that, even if the court has personal jurisdiction over the LLC Defendants, it does not have personal jurisdiction over him. Barbarovich Mem. in Support of Mot. to Dismiss ("Barbarovich Mem.") 4-7 [#128]; Barbarovich Aff. ¶ 10 [#129]. In support, he has submitted evidence that he served First Commons through its New York City based registered agent, CSC. Barbarovich Aff. ¶¶ 7-9 [#129]. In response, Plaintiffs seek to rest on contrary allegations in the complaint. Pls' Opp'n 16 n.10 [#136]. However, under the prima facie standard,

although Plaintiffs are entitled to having their proffered evidence credited, they must actually proffer such evidence and may not simply rely on the allegations of the complaint. See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 680 (1st Cir. 1992) ("a prima facie showing, however, must be based on specific facts set forth in the record. The [plaintiffs] cannot rely on unsupported allegations in their pleadings. They must produce evidence to support their jurisdictional allegation because they have the burden of showing that the court may exercise in personam jurisdiction over [the defendant]") (internal citation omitted). Accordingly, the court finds, for the purposes of assessing personal jurisdiction under the prima facie standard that Barbarovich served First Commons' registered agent in New York City.

As explained above, the fact that activity took place only out of state is not necessarily determinative of personal jurisdiction. But while all of the Defendants directed their documents to Plaintiffs' Massachusetts bank, the LLC Defendants were seeking to induce the bank to turn over Plaintiffs' property without domesticating the judgment in Massachusetts first, while Barbarovich's actions amount to little more than ensuring delivery of the documents on First Commons' registered agent, CSC, at its New York City address. Barbarovich Aff. ¶¶ 6-7 [#129].

Plaintiffs argue, however, that Barbarovich was not merely "a process server" but was "effecting a collection" which purportedly shows his actions, like the LLC Defendants' conduct, was intentionally directed into Massachusetts. Pls' Opp'n 17-18 [#136] (stating that Barbarovich sought to use "an implicit invocation of the sovereign power of Massachusetts' rule of law" to compel First Commons to "submit to his claim of authority."). They assert this is demonstrated, in part, because Barbarovich sought a poundage fee, as opposed to a flat fee, for completing service. Id. at 18.

Yet the inclusion of a poundage fee on its own is not meaningful to the jurisdictional

12

analysis because a poundage fee is permitted by New York law when a marshal executes a judgment. See New York Civil Practice Law and Rules ("CPLR") § 8012. Instead, the service packet amounts to no more than the Marshal following instructions given to him by the LLC Defendants. Barbarovich Aff. ¶¶ 6-7 [#129].

Furthermore, Plaintiffs' arguments in favor of jurisdiction are finally undermined by their response to Barbarovich's claim of judicial immunity. There, Plaintiffs argue Barbarovich's actions were ministerial. Pls' Opp'n 12-14 [#136]. See also Cady v. Marcella, 49 Mass. App. Ct. 334, 339 (2000) ("Enforcing an execution on a judgment is a ministerial, rather than a discretionary, act. The creditor or, as here, the creditor's attorney, provides the deputy sheriff with the writ of execution and instructions to levy on a particular piece of property. The precise action the officer must take is specified: he is commanded by the writ to enforce the execution provided to him and instructed by the creditor as to which piece of property to seize. Hence, that action is purely ministerial."). Plaintiffs have not shown that any of Barbarovich's acts were not ministerial.

Thus, in light of Barbarovich's unrebutted evidence that his actions occurred only within New York City, and the ministerial nature of his role, Plaintiffs have failed to demonstrate on a prima facie standard that Barbarovich purposefully availed himself of the laws of Massachusetts when serving CSC in New York City.[5] Accordingly, the court dismisses Barbarovich as a defendant for lack of personal jurisdiction.[6]

---

[5] Plaintiffs' argument that Barbarovich "purposefully and meaningfully engaged in a business transaction in Massachusetts," so as to come under the Massachusetts long-arm statute is similarly flawed. Pls' Opp'n 16 [#136]. Based on the evidence before the court, the transaction Barbarovich engaged in was between himself and the LLC Defendants, and as part of his role in the New York legal system. Simply because Barbarovich would derive a benefit from success on the execution of judgment, through his poundage fee, did not transform his transaction into one with First Commons or any other entity in Massachusetts.

[6] Because the court does not have personal jurisdiction over Defendant Barbarovich, the court does

13

B.  <u>Venue</u>

The LLC Defendants next argue that venue is not proper under 28 U.S.C. § 1391(b). LLC

Defs' Mem. in Support of Mot. to Dismiss ("LLC Defs' Mem.") 3-4 [#131]. Proper venue exists,

inter alia, in "a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred, or a substantial part of property that is the subject of the action is situated." 28

U.S.C. § 1391(b)(2).

Defendants ask this court to "[v]iew[] this case as a whole" and find, based on the parties'

contractual relationship prior to the alleged conduct underlying this lawsuit, that a "substantial part

of the events" occurred in New York. LLC Defs' Mem. 4 [#131]. However, while Plaintiffs initially

sought relief based on the Merchant Agreement and the New York judgment, the <u>Second Amended</u>

<u>Complaint</u> [#123] pertains to a narrow question as to Defendants' collections efforts. Plaintiffs'

remaining claims all arise from conduct they allege was directed into Massachusetts and which

caused their Massachusetts bank to freeze their assets. Accordingly, the "substantial part of the

events . . . <u>giving rise to the claim[s]</u>" occurred in Massachusetts and therefore venue is proper. 28

U.S.C. § 1391(b)(2) (emphasis added).

Similarly, under 28 U.S.C. § 1404, transfer to another district may be granted "[f]or the

convenience of parties and witnesses, in the interest of justice." Factors pertinent to this statute also

counsel keeping the case in Massachusetts as the Defendants' conduct – communication directed to

First Commons -- is alleged to have occurred in Massachusetts and many of the parties, witnesses,

and relevant pieces of evidence are located here. Thus, a statutory transfer of venue is denied.

C.  <u>Forum Selection and Choice of Law</u>

---

not address the additional arguments raised in his motion to dismiss.

The LLC Defendants next asks the court to transfer the case to the Southern District of New York based on a forum selection clause in the parties' Merchant Agreement and to apply New York law in deciding the instant motions. LLC Defs' Mem. 4-7, 13 [#131].

Plaintiffs argue the forum selection clause does not dictate venue, as their remaining claims, for alleged torts committed during the post-judgment collection process, do not arise from the Merchant Agreement or from the interpretation or breach of the Agreement. Pls' Opp'n 19 [#136].

While this court must generally honor a valid and binding forum selection clause, Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex., 571 U.S. 49, 63 (2013), the language of the forum selection clause governs which claims the clause applies to. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009). Here, the Agreement's forum selection and choice of law clause reads as follows:

> This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of laws. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, then such litigation shall only be instituted in any court sitting in New York State . . . . Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

Merchant Agreement § 4.6 [#133-1] (emphasis added).

A clause that only covers claims "arising" out of an agreement are generally construed narrowly to reach claims that in fact initiate from the performance, interpretation, or breach of the contract. See Huffington v. T.C. Group, LLC, 637 F.3d 18, 22 (1st Cir. 2011) (stating that "arising out of" is more narrowly construed than claims "relating to" the contract); Bay State Anesthesia, Inc. v. Mallinckrodt, Inc., 2002 WL 31761286, at *1 (D. Mass. Dec. 6, 2002) (finding torts committed after contract was terminated allegedly violating Massachusetts statute were not "related

to or arising out of" the contract). <u>See also</u> <u>Ne. Data Sys., Inc. v. McDonnell Douglas Comp. Sys.</u> <u>Co.</u>, 986 F.2d 607, 610-11 (1st Cir. 1993) (analyzing choice of law clause to determine which torts were subject to the clause and which torts were not).

Here, Plaintiffs' claims pertain to Defendants' failure to domesticate the judgment in Massachusetts and do not arise under the Merchant Agreement and are not based on any "interpretation, performance, or breach" of the Agreement. While Defendants point out that the clause was "intended to resolve any ambiguity as to . . . which law would control the transaction [between the parties under the Merchant Agreement] and its enforcement by Yellowstone," <u>Reece</u> <u>Decl. ¶ 8</u> [#132], that transaction, and the underlying validity of the New York judgment, is not before the court.

The LLC Defendants argue further that regardless of the nature of the claims, the last sentence of the above-quoted section of the Agreement waives any ability to object to transfer of venue. LLC Defs' Reply 7 [#142]. But read in context, "a proceeding" in the last sentence refers only to the proceedings based on claims covered by the forum selection clause, and not any proceeding that might arise at any time between the parties. Accordingly, transfer pursuant to the forum selection clause is not warranted. And, since the suit does not arise under or derive out of the Merchant Agreement, the Agreement's choice-of-law provision does not apply either.

Finally, the argument that New York law should be applied, even under Massachusetts' choice of law rules, fails. For tort claims, the court must determine which state has the most significant relationship to the claims. <u>Cosme v. Whitin Mach. Works, Inc.</u>, 417 Mass. 643, 646-47 (1994). As Plaintiffs allege Defendants committed torts through their actions directed into Massachusetts and allege the harms occurred in the state, Massachusetts has the most significant relationship to the claims and its law must be applied in this matter.

16

D.  Dismissal for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

    1.  Standard

Under Fed. R. Civ. P. 12(b)(6), the movant has the burden of demonstrating the complaint

lacks "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and

"plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting in part Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). The court must accept all well-pleaded facts as true and

draw all reasonable inferences in favor of the non-movant. Starr Surplus Lines Ins. Co. v. Mountaire

Farms, Inc., 920 F.3d 111, 114 (1st Cir. 2019) (internal citation and quotation marks omitted). The

movant must show the other party's assertions fall short of establishing "each material element

necessary to sustain recovery under some actionable legal theory." Centro Medico del Turabo, Inc.

v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (internal citation omitted).

    2.  Wrongful Execution

Plaintiffs assert a claim for wrongful execution, alleging that the LLC Defendants'

attempted execution on Plaintiffs' property was carried out in an unauthorized manner. See 33

C.J.S. Executions § 638 (2020) ("[a] levy is wrongful where . . . it is made in an unauthorized, or in

an unreasonable and oppressive, manner"); id. at § 641 ("All persons who have anything to do with

the wrongful issuance or levy of an execution, including persons who procure, direct, or assist in the

commission of the wrongful act by the officer, are liable to the person injured thereby."). Plaintiffs

assert that the LLC Defendants are liable because they failed to domesticate the judgment before the

attempted execution, in violation of M. G. L. c. 235, § 14. Pls' Opp'n 4-5 [#136]. In making this

argument, Plaintiffs do not challenge here the validity of the underlying judgment.

The LLC Defendants do not contest that they failed to domesticate the New York judgment

in Massachusetts prior to the attempted execution. LLC Defs' Mem. 13 [#131]. However, they

argue that because the execution was not illegal under New York law, the execution was not wrongful. Id. 14-15.

The LLC Defendants contend that under Article 52 of the CPLR, the "debt or property subject to enforcement as including debt 'incurred within or without the state,' and debt 'to or from a resident or non-resident.'" Id. 14 (quoting CPLR § 5201(a)) (emphasis added). The quoted statutory language, however, refers only to a "debt"; a separate provision, CPLR § 5201(b) sets forth "[p]roperty against which a money judgment may be enforced," and includes no language addressing out-of-state property.[7]

The LLC Defendants argue further that execution on a bank account located in another state may be proper if the court issuing judgment has personal jurisdiction over the debtor's bank. LLC Defs' Mem. 14 [#131] (citing Koehler v. Bank of Bermuda Ltd., 12 N.Y. 3d 533 (N.Y. Ct. of App. 2009)). But Koehler itself provides that "[i]t is well established that, where personal jurisdiction is lacking, a New York court cannot attach property not within its jurisdiction." Koehler, 12 N.Y. 3d at 538. In the operative complaint, Plaintiffs allege that First Commons only had locations in Massachusetts, SAC ¶¶ 25, 27 [#123], and Defendants offer no facts suggesting that New York courts have personal jurisdiction over First Commons.[8]

---

[7] The LLC Defendants quote a New York state court decision for the proposition that "'New York contains a procedure for executing on judgments out of state. (See Article 50, et seq., Civil Practice Law and Rules.).'" LLC Defs' Mem. 14 [#131] (quoting EBF Partners, LLC v. Amax Nutrasource, Inc., Index No. EF008756-2017 (NY Sup. Ct., Orange Cty., Apr. 5, 2018)). The decision is of no persuasive value where the court includes no discussion supporting its conclusion and no citation to specific statutory language addressing the issue.

[8] Additional cases cited by Defendants where courts dismissed wrongful execution claims when the bank in question had branches in New York, and therefore New York had personal jurisdiction over the bank, are thus distinguishable from the dispute here. See Berkshire Bank v. Tedeschi, 2016 WL 1029526, at *2 (N.D.N.Y. Mar. 15, 2016) (holding registration of judgment was unnecessary because bank had branches in New York and therefore court that issued judgment had personal jurisdiction over bank); LMR Constr. LLC v. JPMorgan Chase Bank, N.A., 2017 WL 3273452, at

The LLC Defendants contend finally that First Commons waived any objection to personal jurisdiction because First Commons accepted the Writ of Execution and froze Plaintiffs' accounts. LLC Defs' Mem. 18 [#131]. The court finds no basis for conflating First Commons' registered agent's receipt of the writ and First Commons' freezing of the accounts with a waiver of an objection to personal jurisdiction. Notably, there is no allegation that First Commons turned Plaintiffs' funds over to the LLC Defendants, or filed a pleading in this action. And if the court were to look past the complaint to documents submitted by the LLC Defendants, First Commons' December 22, 2016, letter to counsel for the LLC Defendants explicitly rejected turning over Plaintiffs' funds, stating that "to execute on a foreign judgment in Massachusetts, the plaintiff must have a Massachusetts judgment," and that First Commons "reserves all rights in the matter." First Commons Letter [#133-4].[9]

Accordingly, on a Rule 12(b)(6) standard, Plaintiffs have sufficiently pleaded that the execution was illegal under Massachusetts law for failure to domesticate the judgment, and the LLC Defendants' defense that New York nonetheless permits their conduct fails.

3.  Conversion

The LLC Defendants contend that as a matter of law, Plaintiffs cannot maintain a claim of

---

*2 (E.D. Ky. Aug. 1, 2017) (accord).

[9] The cases cited by Defendants on the question of waiver do not persuade otherwise. The court in World-Glob. Capital LLC v. Children First Home Health Care, Inc., Index No. 814617/2018 (N.Y. Sup. Ct. Erie Co. Jan. 11, 2019) does not provide any of the underlying facts in the case and also notes that the bank "expressly consented to the jurisdiction of this Court by complying with judgment enforcement devices served by [p]laintiff." And in Cherfas v. Wolf, 867 N.Y.S. 2d 15, 20 (N.Y. Sup. Ct. 2008) (unreported), the court found that, since the party had already voluntarily appeared and therefore complied with a subpoena, he had waived his ability to later challenge the subpoena through a motion to quash. In contrast, while First Commons initially froze the account, it did not appear in court or otherwise cede to the jurisdiction of the New York court and did not turn the property over to Defendants.

conversion or trespass to chattel for money stored in a bank account. LLC Defs' Mem. 18-19 [#131]. "Banks are not liable for conversion when they fail to pay funds that they owe to a customer." Gossels v. Fleet Nat. Bank, 453 Mass. 366, 379 (2009); see also Cruz v. TD Bank, N.A., 855 F. Supp. 157, 175 (S.D.N.Y. 2012) (finding plaintiff could not maintain conversion claim against his or her bank as the relationship between the two parties sounds in contract, as a creditor (the depositor) and a debtor (the bank)). The claim here, however, is not a claim against a bank.

Claims for conversion of funds in a bank account may be stated against third parties. For example, in Cruz, a case on which LLC Defendants rely, the court explained that "conversion may lie where a specific amount of funds in a bank account is withdrawn or transferred." 855 F. Supp. 2d at 175 (citing Payne v. White, 101 A.D. 2d 975, 976 (N.Y. Sup. Ct. 3d Dep't 1984) (reversing dismissal of conversion claim where defendant had wrongfully withdrawn the balance of joint checking account). A plaintiff may therefore maintain a claim of conversion against a third party who has interfered with money in a bank account if the plaintiff can show an ownership or possessory interest in the funds and the third party's intentional and improper exercise of dominion or control in opposition to the plaintiff's interest. See Enargy Power Co. Ltd. v. Wang, 2013 WL 6234625, at *7 (D. Mass. Dec. 3, 2013) (applying elements of conversion tort to claim that defendant wrongfully interference with plaintiff's bank account). Since Plaintiffs have adequately pled such a wrongful interference, the claim may continue.

4. Judicial Estoppel

The LLC Defendants also contend the court should hold that Plaintiffs are judicially estopped from bringing their claims here based on their statements in another proceeding. See LLC Defs' Mem. 20 [#131] (citing NRO Boston, LLC v. Funding Metrics LLC, No. 17-cv-5008-CFK (E.D. Pa. 2017)). According to the LLC Defendants, in the Pennsylvania case, Plaintiffs claim

damages to their business occurred between August and October 2016, and they should therefore be precluded from claiming here that damages occurred in December 2016. Id. Plaintiffs' claims here are limited, however, to those caused by the allegedly wrongful actions by the LLC Defendants in December and are not inconsistent with Plaintiffs' claims in the Pennsylvania case regarding earlier events. While Plaintiffs ultimately may not receive damages for the same injury twice, the court finds no friction in the positions taken in the two cases.

E.  Causation and Damages

Finally, because the LLC Defendants presented matters outside of the pleadings in support of their challenge to Plaintiffs' alleged damages and to the causation of damages, and because, at a hearing on the motion to dismiss, Defendants argued their actions were wholly unrelated to the freezing of the NRO Boston account, the court converted a portion of their motion, pursuant to Fed. R. Civ. P. 12(d), to a partial summary judgment motion with an opportunity for the parties to submit pertinent material. See Mar. 3, 2020 Hr'g Tr. [#152].

Plaintiffs subsequently submitted evidence that would allow a jury to find First Commons froze NRO Boston's bank accounts on December 21 and 22, 2016, in response to the LLC Defendants' Notice to Garnishee and attached documents. Pls' Mem. in Opp'n to Defs' Converted Mot. of Partial Summ. J. 4-5 [#154]. Defendants included the Indelicatos' names and social security numbers in the Notice to Garnishee and instructed First Commons to "transfer to the sheriff all personal property not capable of delivery in which the judgment debtor is known or believed to have an interest now in or hereafter coming into your possession." Notice to Garnishee 7 [#133-3] (emphasis added). In other words, Defendants sought property regardless of the name on the account, so long as the Indelicatos were believed to have an interest in such property. Plaintiffs have also proffered evidence from which a jury could infer that First Commons' employees knew or

21

believed the Indelicatos had an interest in the NRO Boston account, namely the personal guaranty from the Indelicatos the bank required before lifting the freeze, and the bank's use of language in the personal guaranties indicating that both Indelicatos had ownership interests in NRO Boston. On this evidence, even though the LLC Defendants' documents did not list NRO Boston as a judgment debtor, a jury could reasonably find the freezing of NRO Boston's accounts was a foreseeable result of Defendants' claim to all property in which the Indelicatos were believed to have an interest.

In response, Defendants offer a number of arguments as to why summary judgment should be granted. LLC Defs' Mem. in Further Support of Mot. to Dismiss [#160]. For the most part, these arguments are beyond the issues discussed at the hearing on the motion to dismiss and not properly before the court. However, in the interest of moving the litigation forward, the court explains why NRO Boston and the Indelicatos survive this challenge but NRO Edgartown does not.

With regard to damages, Plaintiffs assert the NRO Boston account freeze disrupted "our 2016 Christmas season," Indelicato Decl. ¶ 16 [#155], but offer no details. The court notes that NRO Boston had no more than $36,000 in its accounts at the time of the freeze, that the freeze was only for two days, that no checks were returned for insufficient funds, and that no evidence has been offered as to any new inventory that was not purchased or any similar basis for injury to business operations. See id. ¶¶ 4, 16; Account Balance Screenshot [#155-3].

Nonetheless Plaintiffs' evidence is sufficient for a reasonable jury to find that the freeze of NRO Boston's accounts caused some, albeit very minimal, damages to NRO Boston and the Indelicatos.[10] The record contains evidence that NRO Boston's accounts were indeed frozen, and

---

[10] Defendants' further argument that they cannot be liable to NRO Boston under New York law is misplaced. The New York statute on which they rely, CPLR 5232(a), does not create a blanket immunity for judgment creditors from suit for alleged torts committed against a non-judgment debtor merely because those torts were caused by their judgment device. Moreover, even if such

that NRO Boston could not use those accounts for two days. See, e.g., Indelicato Decl. ¶¶ 5-6 [#155] (discussing the bank's freezing of NRO Boston accounts). Although the LLC Defendants are correct that the Indelicatos cannot claim NRO Boston's injuries as their own, the record supports the Indelicatos' claim that they had to sign personal guaranties and retain a lawyer to unfreeze NRO Boston's accounts. Id. ¶¶ 8, 15.

However, Plaintiffs have failed to furnish specific facts to allow a finding that NRO Edgartown suffered injury. While NRO Edgartown was a signatory to the bank's indemnification release, see Release 14-15 [#156-3] (including NRO Edgartown in the signature block), there is no evidence that joining the release in and of itself was injurious. Plaintiffs had the opportunity to offer evidence as to NRO Edgartown's harm and have not done so. Accordingly, NRO Edgartown is dismissed as a plaintiff.

VI.    Conclusion

Accordingly, for the previously discussed reasons:

1. Vadim Barbarovich's Motion to Dismiss the Second Amended Complaint [#127] is GRANTED for lack of personal jurisdiction.

2. The LLC Defendants' Motion to Dismiss the Second Amended Complaint or Transfer Venue to the Southern District of New York [#130] is GRANTED as to NRO Edgartown and is otherwise DENIED.

IT IS SO ORDERED.

September 28, 2020                                    /s/ Indira Talwani
                                                     United States District Judge

_____

protection existed in New York, Defendants have no claim to immunity for Massachusetts torts based on the New York statute.